ARTIANO SHINOFF
Daniel R. Shinoff, Esq. (SBN 99129)
dshinoff@as7law.com
Jack M. Sleeth, Jr., Esq. (SBN 108638)
jsleeth@as7law.com
Michelle M. Pacis, Esq. (SBN 306549)
mpacis@as7law.com
2488 Historic Decatur Road, Suite 200
San Diego, California  92106
Telephone: 619-232-3122
Facsimile: 619-232-3264

Attorneys for Defendants MICHELLE
O'CONNOR-RATCLIFF; T.J. ZANE

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER GARNIER; and KIMBERLY GARNIER, | Case No.: 3:17-CV-02215-W-JLB |
| Plaintiffs, | **DEFENDANTS MICHELLE O'CONNOR-RATCLIFF AND T.J. ZANE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT [FED. R. CIV. P. 12(b)(6) and FED. R. CIV. P. 12(b)(1)]** |
| v. | |
| POWAY UNIFIED SCHOOL DISTRICT; MICHELLE O'CONNOR-RATCLIFF; T.J. ZANE and DOES 1 through 1000, | **NO ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1.d.1** |
| Defendants. | Judge:   Hon. Thomas J. Whelan |
| | Dept.:   3C |
| | Date:    February 12, 2018 |
| | Time:    N/A |
| | Action Date: October 30, 2017 |
| | Trial date:   Not Set |

COMES NOW Defendants, MICHELLE O'CONNOR-RATCLIFF AND T.J. ZANE (collectively "individual Defendants"), for themselves alone, hereby request that the Court take judicial notice of the following document attached hereto, pursuant to Fed. R. of Evid. 201: *Poway Unified School Dist. v. Garnier*, D067571 (Cal. Ct. App. Oct. 26, 2016).

## I.

## LEGAL AUTHORITY

Federal Rule of Evidence 201(b) provides that "the court may judicially notice a

1

AS7 Law San Diego/1350/0086/PL/S0374713.DOCX

ARTIANO SHINOFF

1   fact that is not subject to reasonable dispute because it . . . can be accurately and readily

2   determined from sources whose accuracy cannot be reasonably questioned." Section (c)

3   of the same rule states that "the court must take judicial notice if a party requests it and

4   the court is supplied with the necessary information."

5       If the Court takes judicial notice of a matter, it may consider the matter in

6   determining a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *See United*

7   *States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

8                      **II.**

9              **ARGUMENT**

10      Judicial notice is proper when a party requests a court to take judicial notice of

11  "court filings and other matters of public record." *See Rey'n Pasta Bella, LLC v. Visa*

12  *USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006). Court orders issued in related

13  litigation are the proper subjects of judicial notice, because they "can be readily and

14  accurately determined from sources whose accuracy cannot be reasonably questioned."

15  *See McVey v. McVey*, 26 F.Supp.3d 980, 984 (C.D. Cal. 2014). Further, courts may take

16  judicial notice of a court order from another court. *See Rosales-Martinez v. Palmer*, 753

17  F.3d 890, 894 (9th Cir. 2014).

18      Here, the individual Defendants request this Court to take judicial notice of a

19  court decision in related litigation, specifically the Court of Appeal decision of

20  Mr. Garnier's appeal of the restraining order filed against him by the Poway Unified

21  School District. The Court of Appeal affirmed the restraining order against

22  Mr. Garnier's opposition. This decision is helpful to demonstrate that the Court of

23  Appeal agreed with the California Superior Court's order granting the restraining order

24  against Mr. Garnier, because he made credible threats of violence towards his children's

25  school's Principal.

26  / / /

27  / / /

28  / / /

ARTIANO SHINOFF

**2**

### III.

### CONCLUSION

This Court should take judicial notice of the Court of Appeal decision, *Poway Unified School Dist. v. Garnier*, D067571 (Cal. Ct. App. Oct. 26, 2016), pursuant to Federal Rule of Evidence Rule 201(b).

Dated: January 5, 2018                     ARTIANO SHINOFF

By:  s/ Jack M. Sleeth, Jr.
     Daniel R. Shinoff
     Jack M. Sleeth, Jr.
     Michelle M. Pacis
     Attorneys for Defendants MICHELLE
     O'CONNOR-RATCLIFF: T.J. ZANE

ARTIANO SHINOFF

17cv02215

AS7 Law San Diego/1350/0086/PL/S0374713.DOCX

**PROOF OF SERVICE**
**USDC Southern District – Case No. 3:17-CV-02215-W-JLB**

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of San Diego in the office of a member of the bar of this court at whose direction the service was made. My business address is 2488 Historic Decatur Road, Suite 200, San Diego, California 92106.

On January 5, 2018, I served the following document:

**DEFENDANTS MICHELLE O'CONNOR-RATCLIFF AND T.J. ZANE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT [FED. R. CIV. P. 12(b)(6) and FED. R. CIV. P. 12(b)(1)]**

☐   **BY MAIL**: by depositing in the United States Postal Service mail box at 2488 Historic Decatur Road, Suite 200, San Diego, California 92106, a true copy thereof in a sealed envelope with postage thereon fully prepaid and addressed as follows:

☒   **BY ELECTRONIC SERVICE** On the date executed below, I served the document via CM/ECF described above on designated recipients through electronic transmission of said documents, a certified receipt is issued to filing party acknowledging receipt by CM/ECF's system. Once CM/ECF has served all designated recipients, proof of electronic service is returned to the filing party.

**COUNSEL FOR PLAINTIFF**
BRIGGS LAW CORPORATION
Cory J. Briggs, Esq.
99 C Street, Suite 111
Upland, CA 91786
Tel: 909-949-7115
Fax: 909-949-7121
Email: cory@briggslawcorp.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 5, 2018, at San Diego, California.

LINDA L. MOORE, CCLS

ARTIANO SHINOFF

4

AS7 Law San Diego/1350/0086/PL/S0374713.DOCX

1
ARTIANO SHINOFF
Daniel R. Shinoff, Esq. (SBN 99129)
2
dshinoff@as7law.com
Jack M. Sleeth, Jr., Esq. (SBN 108638)
3
jsleeth@as7law.com
Michelle M. Pacis, Esq. (SBN 306549)
4
mpacis@as7law.com
2488 Historic Decatur Road, Suite 200
5
San Diego, California  92106
Telephone: 619-232-3122
6
Facsimile: 619-232-3264

7
Attorneys for Defendants MICHELLE
O'CONNOR-RATCLIFF; T.J. ZANE

8

## UNITED STATES DISTRICT COURT

9

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10 CHRISTOPHER GARNIER; and<br>11 KIMBERLY GARNIER, | Case No.: 3:17-CV-02215-W-JLB |
| 12            Plaintiffs, | **DEFENDANTS MICHELLE**<br>**O'CONNOR-RATCLIFF AND T.J.**<br>**ZANE'S INDEX OF ATTACHMENT** |
| 13       v. | **AND ATTACHMENT IN SUPPORT**<br>**OF MOTION TO DISMISS**<br>**PLAINTIFF'S COMPLAINT** |
| 14 POWAY UNIFIED SCHOOL<br>DISTRICT; MICHELLE O'CONNOR-<br>15 RATCLIFF; T.J. ZANE and DOES 1<br>through 1000, | Judge:      Hon. Thomas J. Whelan<br>Dept.:      3C<br>Date:       February 12, 2018<br>Time:       N/A |
| 16 | |
| 17            Defendants. | Action Date:October 30, 2017<br>Trial Date:  Not Set |
| 18 | |

19       **TO THE COURT AND ALL PARTIES OF RECORD:**

20       **PLEASE TAKE NOTICE** that Defendants Michelle O'Connor-Ratcliff and

21 T.J. Zane, hereby attach a true and correct copy of the following attachment in support

22 of its Motion to Dismiss Plaintiff's Complaint:

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

ARTIANO SHINOFF

1

17cv02215

AS7 Law San Diego/1350/0086/PL/S0375156.DOCX

1

### INDEX OF ATTACHMENT

2

| ATTACHMENT | DOCUMENT DESCRIPTION | PAGE NOs |
|:---:|:---|:---:|
| 1 | COURT OF APPEAL DECISION | 1-22 |

4

5

6    Dated: January 5, 2018

ARTIANO SHINOFF

7

By:  s/Jack M. Sleeth, Jr.

8          Daniel R. Shinoff
dshinoff@as7law.com

9          Jack M. Sleeth, Jr.
jsleeth@as7law.com

10         Michelle M. Pacis
mpacis@as7law.com

11   Attorneys for Defendants MICHELLE
O'CONNOR-RATCLIFF: T.J. ZANE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARTIANO SHINOFF

2

AS7 Law San Diego/1350/0086/PL/S0375156.DOCX

# ATTACHMENT 1

# ATTACHMENT 1

{}

Filed 10/26/16  Poway Unified School Dist. v. Garnier CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| POWAY UNIFIED SCHOOL DISTRICT, | D067571 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2014-00035745-CU-PT-CTL) |
| CHRISTOPHER GARNIER, | |
| Defendant and Appellant. | |

APPEAL from an orders of the Superior Court of San Diego County, Tamila E. Ipema, Judge.  Affirmed.

Law Office of Genevieve A. Suzuki and Genevieve A. Suzuki for Defendant and Appellant.

Artiano Shinoff & Holtz, Daniel R. Shinoff, Jack M. Sleeth, Jr., and Amir H. Azimzadeh for Plaintiff and Respondent.

Poway Unified School District (PUSD or district) filed a petition seeking a workplace violence restraining order against Christopher Garnier, whose children attend an elementary school operated by PUSD.  The petition was filed after Garnier made

threatening comments directed at the school's principal, Mary Jo Thomas, who had recalled Garnier's election to the school site council.  Prior to the hearing on PUSD's petition, Garnier filed a special motion to strike under the anti-SLAPP (strategic lawsuit against public participation) law.  The trial court denied the motion to strike and issued a workplace violence restraining order against Garnier, prohibiting him from coming within 100 feet of Thomas for three years.

On appeal, Garnier contends the trial court erred in denying his anti-SLAPP motion and in issuing the workplace violence restraining order.  We conclude that Garnier has not shown reversible error and affirm the orders.

## BACKGROUND

Garnier is African-American and the father of three young children.  At the time of the incidents involved in this case he was a full time stay-at-home parent.  Garnier's two oldest children attend PUSD's Painted Rock Elementary School (Painted Rock). Garnier himself attended PUSD schools from grade school through his graduation from Rancho Bernardo High School.  Garnier also worked for PUSD at Del Norte High School (Del Norte) as a student teacher while pursuing a teaching credential, and, thereafter, as an impact teacher for struggling students and as an assistant football coach.  Garnier holds a bachelor's degree from the University of Hawaii at Manoa and served as a helicopter pilot in the United States Marine Corps prior to his work at Del Norte.

A.  *Garnier's History with PUSD and Painted Rock*

In June 2013, while employed at Del Norte, Garnier was involved in an altercation with PUSD's director of student discipline, Paul Gentle.  Garnier appeared at an

2

ATTACHMENT
DFTS000005

expulsion hearing to testify on behalf of one his students, who is also African-American. Gentle testified that before Garnier was called to testify, Garnier became disruptive and argumentative, and made intimidating comments to Gentle—specifically, telling Gentle he had served his country as a marine for 10 years and had "12 certified kills." As a result of Garnier's behavior, Gentle prevented Garnier from testifying at the discipline proceeding.

Garnier refuted Gentle's account of the incident and testified that he never threatened Gentle or anyone else involved in the proceeding. Garnier stated that Gentle precluded him from testifying on behalf of his student without explanation. Garnier testified in this case that after Gentle twice prevented Garnier from testifying on behalf of his student, Garnier immediately drove to Del Norte and quit his teaching job. Garnier explained that he decided to quit because he was frustrated with PUSD's unfair treatment of African-American students. Garnier was terminated from his coaching position shortly after quitting his teaching job. As a result of that termination, in December 2013, Garnier filed a racial discrimination complaint against PUSD.

In the fall of 2013, another parent at Painted Rock, Traci Oliveira, accused Garnier of disruptive and threatening behavior at the elementary school. Oliveira submitted a declaration in support of the district's petition stating that in October 2013 she saw Garnier yelling at another parent and banging on the parent's car in the school's parking lot. According to Oliveira, she confronted Garnier about his actions and then got into an altercation with Garnier that continued at each pick up and drop off time at school for several days. Oliveira reported the incident to the school office.

3

ATTACHMENT
DFTS000006

Oliveira described a similar altercation with Garnier later in the school year. On April 1, 2014, Garnier saw Oliveira in her car in the school parking lot, then yelled at her and punched her car window. After the incident, Oliveira changed cars and license plate numbers so that Garnier could not easily recognize her. Garnier denied Oliveira's account of their interaction and testified he had only spoken to Oliveira, peaceably, once or twice in his life.

B. *Garnier's Interactions with Thomas and Other PUSD Employees During the 2014-2015 School Year*

Thomas became the principal of Painted Rock during the summer before the 2014-2015 school year. In August 2014, before the start of the new year, Thomas solicited applicants for "noon duty" positions via an e-mail to parents. A week after that e-mail, a parent newsletter was sent out that contained a second solicitation to parents seeking to fill the noon duty positions. Garnier responded to the second solicitation by sending an e-mail to Thomas indicating that he wanted to volunteer for the paid position and donate any compensation he received to the school parent-teacher association. Thomas sent an e-mail in response referring Garnier to her assistant, Denya Cuiffo, who was responsible for working with PUSD to fill the positions.

Garnier called Cuiffo the following day and Cuiffo informed him the positions had been filled already. Garnier became agitated at this news, raised his voice and demanded to know who filled the positions. Cuiffo told Garnier that she did not know and ended the call. Garnier called Cuiffo back a short time later, and again demanded to know who had been hired for the noon-duty positions and their cultural and socio-economic

4

ATTACHMENT
DFTS000007

backgrounds.  Cuiffo again refused to provide the information and, because she felt uneasy, told Thomas about Garnier's call.  Thomas responded that she would handle any further communication with Garnier and sent him an e-mail reiterating that that the noon-duty positions had been filled and providing Garnier with the names of the parents that had been hired.  Thomas testified that in his e-mail back to her, Garnier expressed anger that the positions were filled by nine White women.

On September 22, 2014, Garnier posted on PUSD's Facebook page that "[i]t's unfortunate that in a world full of culture and diversity; in a country where a black man is President of the United States, that at the 'Professional Growth Day' for teachers in [PUSD], the pictures of the teachers are a majority of white faces?  Blacks can educate white children!  Hopefully the district will hire more.  [¶] I say this because my black children are students in [PUSD] and their educators look nothing like them.  Growing up in [PUSD], I always felt unwanted, except for when they needed me to play football for them.  I hope my kids don't have to go through the feelings I had to endure.  [¶]  Very Respectfully,  [¶] Chris Garnier."

The following day, Garnier posted other similar messages on the district's Facebook page and attended a PUSD community forum at Rancho Bernardo High School, where PUSD's board was scheduled to appear.  The district's director of communications, Jessica Wakefield, also attended the event.  She submitted a declaration in support of PUSD's petition asserting that throughout the meeting Garnier interrupted the presenters and when it was Garnier's turn to speak he aggressively asked why there were no African-American board members.  Wakefield also described Garnier running

5

ATTACHMENT
DFTS000008

down the aisle at the end of the forum and jumping on the stage.  Wakefield stated she thought that Garnier was going to physically assault the board members and she feared for their safety, though she admitted once on stage Garnier shook their hands.

On October 6-7, 2014, Painted Rock held an election for its school site council. The site council is a body comprised of parents and school staff that meets regularly to review school-wide goals and approve allocation of funds.  Garnier ran for an open parent seat on the site council.  On the first day of the election, Thomas received complaints from five or six parents and staff about Garnier's campaigning activity. Thomas discovered Garnier was handing out his own version of the ballot, which she had e-mailed to parents to use to cast their votes.  Garnier altered the ballot by adding a picture of himself.

Thomas called Garnier and asked him to stop handing out altered ballots.  Garnier responded by asking Thomas to identify a provision in the school's bylaws that precluded him from disseminating the altered ballot.  Thomas told Garnier she could not identify a specific provision.  Before the conversation was over, the call was disconnected.  Thomas later e-mailed Garnier to apologize for not calling back because she had been called to deal with another situation.  Garnier responded with a lengthy e-mail back to Thomas explaining that he wanted to be elected to the council so that minorities in the school community would be represented.  Garnier's e-mail also accused Thomas of trying to stifle voting and stated that he and his wife would continue to hand out ballots and campaign at the school.  Garnier also wrote:  "We own a home less than a half-mile from Painted Rock.  We aren't going anywhere and you are either going to assist in being a

6

ATTACHMENT
DFTS000009

conduit for change for the betterment of minorities and those of meager socioeconomic status within this community or we can continue down this path of useless bickering and feelings of control; the difference, I have NOTHING to lose and that feeling is liberating!"

The declaration submitted by Thomas in support of PUSD's petition for a restraining order states that on October 10, 2014, she was informed by the district (without indicating who exactly informed her or why) that the election was invalid because Garnier had altered the ballots and that the election would need to be conducted again.[1]  The following day, Thomas e-mailed each candidate notifying them that due to "technical issues with the School Site Council ballot" there would be a revote on October 15, 2014, at designated times before and after school.  Thomas also informed the candidates that parents would be required to show a form of identification in order to vote.

Thereafter, Garnier posted statements on PUSD's and Painted Rock's Facebook pages that Thomas was racist and had made derogatory comments to Garnier and his family.  Thomas's declaration indicates that as a result of the postings, parents expressed concern about student safety at the school.  Because of parent concern and Thomas's own concern for student and staff safety, a San Diego sheriff's deputy was stationed outside the school the following day.  That day, October 13, 2014, Garnier came to the Painted Rock office and told Ciuffo that Thomas should "stay away from his children because

---

[1]     Garnier testified that he was told by PUSD's superintendent that he won the election.

ATTACHMENT
DFTS000010

[Thomas] had made racist slurs to them" and that if Thomas "did not stay away from his children 'it will be bad day.' "  Garnier returned to the office later the same day and told Ciuffo that if Thomas did not meet with him he would pull his two children from the school.

The same day, Garnier distributed flyers in the school parking lot stating: "Principal Thomas does not want minorities at Painted Rock.  Because a black man won the Student Site Council Rep Position, Principal Mary Jo Thomas is insisting on a 'new' election because a 'boy' 'nigger' was elected!  AND ID's are required to vote for the FIRST TIME EVER at Painted Rock Elementary School for the School Site Council.  [¶] This is 2014.....no reason why you should be required to show a valid ID in order to vote for the leader of the Painted Rock Elementary School Site Council AND ALL of her other 'made-up' requirements."

Thomas observed parents crying in the parking lot after finding the flyers on their cars and was told by parents that their children found the flyers.  Thomas also reported that some "families pulled their children out of school out of concern for their safety" and that staff members requested time off due to stress caused by Garnier's behavior.  Thomas also testified that Garnier e-mailed her, also copying PUSD's superintendent, between 80 and 100 times from August to October.  The theme of Garnier's e-mails was that PUSD and Thomas individually were racist and discriminated against minorities.

C.  *Court Proceedings and Garnier's Conduct After PUSD Filed Its Petition*

On October 21, 2014, the district filed a petition for a workplace violence restraining order (1) seeking to protect Thomas and her two daughters, ages 16 and 21,

8

from Garnier and (2) requiring Garnier to stay at least 100 yards away from all PUSD sites. In support of the petition, PUSD submitted the declarations of Thomas, Cuiffo, Wakefield, Oliveira, and David Hall (who was present during the 2013 student disciplinary hearing at which Garnier was precluded from testifying). The trial court issued a temporary restraining order protecting Thomas and her daughters, but denying the stay-away order for all PUSD sites. The court also set a further hearing on the petition for November 12, 2014, which was continued at Garnier's request to December 5, 2015, and continued again to December 18, 2015, on the parties' stipulation for additional time to try to resolve the case.

After the temporary restraining order was entered, in late November and early December, Garnier sent several e-mails to the district's superintendent, John Collins, and other district personnel (though not Thomas), again accusing the district of racial intolerance, and referring to Thomas, Gentle, and others as racist and bigoted. In one e-mail, dated December 2, 2016, Garnier stated he would attend the district's board meeting in January and ask for the immediate resignation of Collins.

PUSD submitted a supplemental declaration by Wakefield stating that she had been approached by Garnier and his wife, Kimberly Garnier, during a break at the board's December 8, 2014 meeting. According to Wakefield, Garnier confronted her and told her she had written "terrible racist things about me." Garnier then walked away and Kimberly told Wakefield her "testimony was horrible, untrue, bigoted, racist and hateful." Wakefield responded that she had just written what she observed and how Garnier's actions made her feel. Kimberly responded that Wakefield "tried to keep

9

ATTACHMENT
DFTS000012

[Garnier] from his kids, but luckily the truth was seen and you were not successful." According to Wakefield, Kimberly then said that Wakefield and others that testified against Garnier would "pay and . . . get what is coming to them."  Wakefield stated the interaction had intimidated her and made her feel threatened.[2]

On December 18, 2014, Garnier sought and received an additional continuance of the restraining order hearing in order to file an anti-SLAPP motion.  Garnier's motion asserted that the declarations submitted by PUSD in support of its petition focused on speech by Garnier that was protected by the First Amendment (specifically his e-mails to Thomas and other district employees, his postings on Facebook, and his distribution of flyers at school).  After full briefing and a hearing, on January 13, 2015, the trial court denied the anti-SLAPP motion, finding Garnier was unable to show that PUSD's petition sought to enjoin protected activity.  The court explained, "[Garnier's] criticism of the district [is] not the subject of the injunction and not the conduct sought to be prohibited." Rather, "the thrust and gravamen of the petition is to prevent credible threats of violence and harassment to Principal Thomas and not to prevent respondent's free speech."

After its ruling on Garnier's anti-SLAPP motion, the court commenced the hearing on PUSD's petition.  Garnier sought to exclude the testimony of all of PUSD's witnesses

---

[2]     The district also submitted as evidence in support of its petition an unrelated civil harassment restraining order entered against Garnier in 2012.  At the hearing on PUSD's petition, Garnier explained that the restraining order was brought by a former roommate that he had sued in small claims court for failing to pay rent and bills.  After he obtained a $5,000 award against the roommate, she sought the restraining order.  Garnier explained that he did not challenge the petition or appear at the hearing because he did not think he would ever see the roommate again.  Garnier admitted the roommate accused him of threatening violence but denied the allegation.

10

ATTACHMENT
DFTS000013

except Thomas. PUSD opposed Garnier's request and also renewed its own request to include all PUSD sites in the stay-away order, asserting the witness testimony was relevant to that request. PUSD also argued the testimony was relevant to show Garnier engaged in an erratic and harassing course of conduct and had a propensity for violence. Garnier's response to PUSD's opposition asserted the testimony should be excluded because (1) it was improper character evidence, (2) the witnesses lacked personal knowledge, (3) the testimony was unduly prejudicial, and (4) the testimony was not relevant to PUSD's petition. Garnier also asked the court to deny PUSD's renewed request for a stay-away order, asserting such an order, if issued, would violate his constitutional right to parent his children.

The court denied the district's renewed request for the stay away order, but allowed the testimony of the district's third party witnesses "for the limited purpose of providing a relevant background of the history of alleged animosity from Mr. Garnier to the District culminating in the threats to Principal Thomas." At the hearing on PUSD's petition, the court heard the testimony of the district's witnesses (Thomas, Gentle, Wakefield, Hall, Oliveira and Cuiffo) and Garnier's witnesses (Garnier, Kimberly, and Lee Cole, the head football coach at Del Norte that employed Garnier as his assistant). After closing arguments, the trial court issued its order granting PUSD's petition for a workplace violence restraining order. Pointing to all of the testimony from PUSD's witnesses about Garnier's conduct over the preceding two years, the court found that Garnier's behavior constituted a course of conduct that would place a reasonable person

11

ATTACHMENT
DFTS000014

in fear for his or her safety.  The court issued a workplace violence restraining order

prohibiting Garnier from coming within 100 feet of Thomas for a period of three years.[3]

## DISCUSSION

Garnier challenges three rulings by the trial court:  (1) the admission of testimony

by PUSD's third-party witnesses, which he asserts was irrelevant to the petition and

improper character evidence; (2) the imposition of the workplace violence restraining

order against him, which he contends was not supported by sufficient admissible

evidence; and (3) the denial of his anti-SLAPP motion.  We reject each of these

arguments and affirm the order entered below.

I.   *General Principals Governing Imposition of a*
     *Workplace Violence Restraining Order*

Code of Civil Procedure section 527.8[4] authorizes an employer to seek a

restraining order on behalf of its employees to prevent threats or acts of violence in the

workplace by another employee or a third person.  (*Scripps Health v. Marin* (1999) 72

Cal.App.4th 324, 333-334 (*Scripps Health*).)  Subdivision (a) of section 527.8 provides:

"Any employer, whose employee has suffered unlawful violence or a credible threat of

violence from any individual, that can reasonably be construed to be carried out or to

have been carried out at the workplace, may seek a temporary restraining order and an

---

[3]      At oral argument, counsel for PUSD informed this court that since the restraining
order was imposed, Thomas has been transferred to a different school.  As a result,
Garnier is no longer restrained from visiting Painted Rock Elementary School and is able
to participate in his children's school life.

[4]      Undesignated statutory references are to the Code of Civil Procedure.

ATTACHMENT
DFTS000015

injunction on behalf of the employee and, at the discretion of the court, any number of other employees at the workplace, and, if appropriate, other employees at other workplaces of the employer."

The statute defines "unlawful violence" as "any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, [excluding] lawful acts of self-defense or defense of others." (§ 527.8, subd. (b)(7).) "Credible threat of violence" is defined as "a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose." (*Id.*, subd. (b)(2).) A "[c]ourse of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an employee to or from the place of work; entering the workplace; following an employee during hours of employment; making telephone calls to an employee; or sending correspondence to an employee by any means, including, but not limited to, the use of the public or private mails, interoffice mail, facsimile, or computer email." (§ 527.8, subd. (b)(1).)

## II. *Evidentiary Ruling*

Garnier contends the court erred by admitting Oliveira's testimony about the incidents during the 2013-2014 school year and Gentle's and Hall's testimony about the 2013 disciplinary proceedings, both of which occurred before Thomas became the principal of Painted Rock. He also challenges the admission of Wakefield's testimony. Garnier asserts the testimony was not relevant to the district's petition and was inadmissible character evidence under Evidence Code section 1101, subdivision (a). He

13

ATTACHMENT
DFTS000016

further contends that, even if properly admitted under Evidence Code section 1101, the evidence should have been excluded as unduly prejudicial under Evidence Code section 352.

PUSD responds that the evidence was properly admitted because it was relevant to show why Thomas and other Painted Rock staff feared Garnier and because it provided context for the events involving Thomas. PUSD further asserts that even if the evidence was not properly admitted, Garnier's challenge fails because he has not shown he was prejudiced by the admission of the testimony.

A

The admission of evidence is in general governed by Evidence Code sections 210, 351, and 352. Evidence Code section 351 states: "Except as otherwise provided by statute, all relevant evidence is admissible." Evidence Code section 210 defines relevant evidence as "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Although all relevant evidence is admissible, Evidence Code section 352 gives a trial court discretion in excluding some otherwise admissible evidence: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Under Evidence Code section 1101, subdivision (a) "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of

14

reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Subdivision (b) of section 1101, however, provides that nothing in that section "prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

"We review a trial court's decision to exclude evidence for abuse of discretion. (*People v. Linton* (2013) 56 Cal.4th 1146, 1181.) The decision to exclude evidence 'will not be disturbed except on a showing [that] the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation].' " (*People v. Peoples* (2016) 62 Cal.4th 718, 745.)

B

As noted, the trial court allowed the testimony of the district's third party witnesses "for the limited purpose of providing a relevant background of the history of alleged animosity from Mr. Garnier to the District culminating in the threats to Principal Thomas." At the hearing on the motion, the court stated the evidence was relevant to issues before it and to Garnier's course of conduct towards PUSD employees.

We cannot say that the court abused its discretion in concluding that the evidence of Garnier's behavior at the student disciplinary hearing and his interactions with Oliveira and Wakefield was relevant to the issues before the court. Specifically, the evidence related to whether Garnier had engaged in a "course of conduct that would place a reasonable person in fear for his or her safety . . . and that serves no legitimate purpose."

15

(§ 527.8, subd. (b)(2).) Garnier's interactions with both Gentle and Oliveira, which occurred within the school year before his interactions with Thomas and Cuiffo, were known to Thomas. These facts (both the prior altercations and that Thomas was aware of them) were relevant to the court's evaluation of whether Garnier's conduct constituted a threat of violence under section 527.8. (See *Scripps Health, supra*, 72 Cal.App.4th at p. 335, fn. 9.) Likewise, Wakefield's testimony concerning Garnier's *recent* conduct was relevant to the course of conduct the trial court was tasked with evaluating.

We also reject Garnier's assertion that the trial court abused its discretion by not excluding the testimony under Evidence Code section 1101. Under subdivision (b) of that provision, character evidence may be admitted if it is relevant "to prove some fact . . . other than [the defendant's] disposition to commit such an act. Here, the evidence was relevant to whether Garnier had engaged in a course of conduct that placed Thomas and other staff members in fear for their safety.[5]

### III. *Sufficiency of the Evidence*

Garnier next asserts that insufficient evidence supported the trial court's finding that he presented a credible threat of violence to Thomas. We reject this claim.

---

[5] Further, Garnier has not shown the court abused its discretion by finding the evidence was not unduly prejudicial under Evidence Code section 352 or that the result would have differed if the evidence had been excluded. Of note, the trial court denied the district's request to expand the injunction to all PUSD sites, suggesting the court did not overemphasize Gentle's and Hall's testimony.

ATTACHMENT
DFTS000019

A

In order to "obtain a permanent injunction under section 527.8, subdivision (f), a plaintiff must establish by clear and convincing evidence not only that a defendant engaged in unlawful violence or made credible threats of violence, but also that great or irreparable harm would result to an employee if a prohibitory injunction were not issued due to the reasonable probability unlawful violence will occur in the future." (*Scripps Health, supra*, 72 Cal.App.4th at p. 335.) Further, "the determination of whether it is reasonably probable an unlawful act will be repeated in the future rests upon the nature of the unlawful violent act evaluated in the light of the relevant surrounding circumstances of its commission and whether precipitating circumstances continue to exist so as to establish the likelihood of future harm." (*Id.* at p. 335, fn. 9.)

"On appeal . . . we review an injunction issued under section 527.8 to determine whether the necessary factual findings are supported by substantial evidence. [Citation.] Accordingly, we resolve all factual conflicts and questions of credibility in favor of the prevailing party, and draw all reasonable inferences in support of the trial court's findings." (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 538.) We affirm a judgment if it is supported by substantial evidence, even though substantial evidence to the contrary exists and would have supported a different result. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) "'The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.'" (*Crail v.*

17

ATTACHMENT
DFTS000020

*Blakely* (1973) 8 Cal.3d 744, 750.)  In addition, the trial court's exercise of its discretion to grant injunctive relief "will not be disturbed on appeal absent a showing of a clear abuse of discretion." (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.)

B

Garnier contends the court's order granting PUSD's petition was not supported by sufficient evidence because Garnier's conduct had a legitimate purpose of promoting diversity in the school.  We agree with Garnier, and the district recognizes, that some of his conduct, if viewed in isolation, was a proper exercise of his rights to free speech and to involvement in his children's education.  But the trial court was not limited to evaluating each event in isolation in the way that Garnier advances.  Rather, the court was tasked with looking at all of the relevant surrounding circumstances to determine whether Garnier had "made credible threats of violence." (*Scripps Health, supra*, 72 Cal.App.4th at p. 335.)

The evidence at the hearing on the petition was sufficient to show Garnier engaged in a "course of conduct that would place a reasonable person in fear for his or her safety . . . and that serve[d] no legitimate purpose." (§ 527.8, subd. (b)(2).)  When the evidence is viewed in its entirety, we cannot conclude it was insufficient to support the trial court's order.  Specifically, Garnier telling Cuiffo it would be a "bad day" for Thomas if she did not stay away from his children; Garnier e-mailing Thomas that he had "nothing to lose" after Thomas asked him to stop altering the election ballots; Garnier papering the school parking lot with inflammatory flyers after the election was recalled;

18

ATTACHMENT
DFTS000021

and Garnier's earlier conduct, which Thomas was aware of, that included pounding on car windows and yelling at parents at pick-up and drop-off and threatening statements made by Garnier to Gentle during the 2013 disciplinary proceeding.[6]

To be clear, we do not suggest that Garnier's e-mails and Facebook posts about racial discrimination at the school and within the district, alone, could support the injunction issued by the trial court. Rather, the evidence of the *specific instances* of threatening behavior by Garnier, viewed in the context of all the surrounding circumstances, adequately supported the trial court's findings that Thomas and other Painted Rock staff members reasonably feared Garnier and that the restraining order was necessary to protect them.[7]

---

[6] Garnier argues, as he did in the trial court, that his statement to Cuiffo that it would be a bad day for Thomas if she came near his children cannot be construed as a threat. Rather, he asserts it was only an "expression of concern that Thomas, a school official he believed to be racist, would be around his children . . . ." The court, however, rejected this explanation and found Ciuffo's and Thomas's testimony concerning the threatening nature of the statement credible. This court may not second guess that credibility determination. (See *City of San Jose v. Garbett, supra*, 190 Cal.App.4th at p. 538.)

[7] Garnier's reliance on *Leydon v. Alexander* (1989) 212 Cal.App.3d 1 (*Leydon*) is misplaced. *Leydon* reversed a civil harassment restraining order issued under section 527.6. (*Leydon*, at p. 3.) Unlike this case, *Leydon* involved a *single* verbal argument. (*Leydon*, at p. 4.) In reversing the injunction, the court noted that section 527.6 requires the petitioner to show that the person it seeks to restrain engaged in "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person and which serves no legitimate purpose" (*Leydon*, at p. 4) and, like section 527.8, defines a "[c]ourse of conduct" as "a series of acts over a period of time, however short, evidencing a continuity of purpose." (§ 527.6, subd. (b)(1).) The court concluded that under the plain meaning of the statutes the single argument between the parties was insufficient to support the trial court's finding the former employee engaged

ATTACHMENT
DFTS000022

IV. *Denial of Garnier's Anti-SLAPP Motion*

Finally, Garnier asserts that the trial court erred by denying his anti-SLAPP motion. Because we conclude that the trial court's order imposing the injunction must be affirmed, we necessarily affirm the court's ruling on Garnier's anti-SLAPP motion.

A

"Whether section 425.16 applies, and whether the plaintiff has shown a probability of prevailing, are both questions we review independently on appeal." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906.) Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Resolution of a special motion to strike, therefore, "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it

---

in a harassing course of conduct. (*Leydon*, at p. 5.) Here, in contrast, there was a series of incidents of threatening conduct by Garnier.

ATTACHMENT
DFTS000023

then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

B

The trial court concluded that Garnier's "criticism of the district" was not the "subject of the injunction and not the conduct sought to be prohibited" by PUSD. Rather, the court found that "the thrust and gravamen of the petition [was] to prevent credible threats of violence and harassment to Principal Thomas." On this basis the court concluded that the petition did not arise from protected activity.

On appeal, Garnier contends the court erred in reaching this conclusion because all of the conduct at issue constituted constitutionally protected speech. Garnier further asserts that if the constitutionally protected conduct is excluded from the analysis, as it should have been, then the district would not have been able to demonstrate a probability of prevailing on the merits of its petition. We reject these arguments.

As discussed, the court's order granting the district's petition was based on what the court determined, as the trier of fact, were threats of violence by Garnier. The workplace violence restraining order was not, as Garnier asserts, issued because Garnier accused the district and Thomas of acting in a racially discriminatory manner. To the extent the two types of statements (threats and accusations of discrimination) were intertwined and Garnier's threatening conduct could also be characterized as an exercise of his free speech rights, those rights are not absolute. (See *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1122 ["It has long been the rule, of course, that physical violence and the threat of violence are not constitutionally protected . . . ."].)

21

ATTACHMENT
DFTS000024

Further, because the court's imposition of the restraining order was supported by sufficient evidence, PUSD met its burden on the second prong of the anti-SLAPP analysis to show a probability of prevailing on the merits of its petition. (See *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 663-664 [reversing order denying anti-SLAPP motion where petitioner's claims were subsequently dismissed on the merits].) For this reason, even if the court erred by finding that the conduct was not protected activity under the first prong of the anti-SLAPP analysis, the order denying the motion must stand.

DISPOSITION

The trail court's orders denying Garnier's anti-SLAPP motion and issuing a three-year workplace violence injunction are affirmed. Costs are awarded to PUSD.


NARES, Acting P. J.

WE CONCUR:


HALLER, J.


IRION, J.

ATTACHMENT
DFTS000025