# EXHIBIT "P"

Christopher Garnier 11/27/2018

```
 1                  UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4       _____
                                           )
         CHRISTOPHER GARNIER; and           )
 5       KIMBERLY GARNIER,                  )
                                           )
 6                      Plaintiffs,         )
                                           )
 7             v.                           ) Case No.:
                                           ) 3:17-CV-02215-W-JLB
 8       POWAY UNIFIED SCHOOL DISTRICT;     )
         MICHELLE O'CONNOR-RATCLIFF;        )
 9       T.J. ZANE and DOES 1 through       )
         1000,                              )
10                                          )
                        Defendants.         )
11       _____)

12

13

14

15       VIDEOTAPED DEPOSITION OF CHRISTOPHER GARNIER,

16       taken by the Defendants MICHELLE O'CONNOR-RATCLIFF;

17       T.J. ZANE, commencing at 9:03 a.m. on Tuesday,

18       November 27, 2018, at 2488 Historic Decatur Road,

19       Suite 200, San Diego, California, before

20       Judy M. Reiersen, Certified Shorthand Reporter, in

21       and for the State of California.

22

23

24

25
```

Ex. P 002

Christopher Garnier  11/27/2018

```
 1   read.
 2       A   Yes, sir.
 3       Q   Ever been convicted of a felony?
 4       A   Never.
 5       Q   All right.  Let's get into the substance of
 6   this case.
 7       A   Let's do it.
 8       Q   Okay.  You believe that your access to an
 9   internet system of some kind was blocked.
10       A   Right.
11       Q   What was blocked?
12       A   The social media site of
13   Michelle O'Connor-Ratcliff, so her Twitter and her
14   Facebook page, and she is a Poway Unified School
15   District trustee, elected official, and the Facebook
16   page of Zane, T.J. -- sorry, T.J. Zane, who is also a
17   Poway Unified School District trustee, elected official.
18       Q   And what were you blocked from on T.J. Zane's
19   account?
20       A   I was blocked from commenting.
21       Q   And was that Facebook?
22       A   Facebook.
23       Q   Was it Twitter?
24       A   It was not Twitter.
25       Q   You heard his testimony yesterday that he
```

Christopher Garnier  11/27/2018

```
 1      Q    -- I'd see a little place where I could
 2   comment --
 3      A    Absolutely.
 4      Q    -- if I wasn't blocked?
 5      A    Yes, sir.
 6      Q    If I was blocked -- that's subjunctive.
 7           If I were blocked --
 8      A    Right.
 9      Q    -- then I wouldn't see that little -- I'd see
10   everything else but I wouldn't see that?
11      A    You can see the comments that other folks have
12   made.  You can -- you can see what's been posted, but
13   you are not allowed to comment at all.
14           So that block is gone.  It allows you to share.
15   There's other things as well, too.  You can "like"
16   things or add a -- a wow face or whatever, little emojis
17   that kind of follow along with that, and you're also
18   blocked from adding those as well, too.
19           So basically it prevents you from existing or
20   showing any kind of emotion, I guess, per se within
21   the -- within their social media page.
22      Q    And does that only affect the postings of the
23   owner of the Facebook site?
24           MR. BRIGGS:  Objection.  Vague.
25   / / /
```

Christopher Garnier  11/27/2018

1   BY MR. SLEETH:
2       Q   Can you make any kind of a comment or like or
3   emoji for the person who owns the website and posts?
4       A   Nothing at all.
5       Q   Can you make any kind of comment or emoji or
6   like for anyone who commented?
7       A   Nothing at all.
8       Q   Nothing at all.  All right.
9           Can you see everything that everybody else can
10  see?
11      A   You can see it, yes, sir.
12      Q   All right.  Still staying with Board Member
13  Zane.
14      A   Uh-huh.
15      Q   How do you know that you were not blocked on
16  his Twitter account?
17      A   Because I'm able to still comment.
18      Q   Do you still comment on his Twitter account?
19      A   I do not, no.  I haven't in a few months.
20      Q   And why did you stop?
21      A   Quite frankly, because T.J. and I had a
22  conversation, that's the honest-to-goodness answer, and
23  we came to kind of an amicable understanding, and I
24  appreciated the conversation that we've had, and until
25  something changes or until I feel that he is not serving

Ex. P 005

Christopher Garnier  11/27/2018

```
 1            So if you're going to ask me specifically what
 2   it was about, I'm not really quite sure, but I guarantee
 3   it had to do with our former superintendent,
 4   Mr. Collins, John Collins.
 5        Q   Did you ever go to a board meeting?
 6        A   Of course.
 7        Q   And did you fill out a speaker card and speak
 8   to the board?
 9        A   Multiple times.
10        Q   Can you give me an estimate of the number of
11   times?
12        A   Probably more than six but less than 12.
13        Q   Does the board meet every month?
14        A   They do.
15        Q   And then, occasionally, special meetings?
16        A   Sometimes.
17        Q   So you think you attended something like six or
18   so?
19        A   Yes, sir.
20        Q   Okay.  And did you speak each of those times?
21        A   I didn't speak every time I went to a board
22   meeting, but the majority of the time, I did.
23        Q   And in a speaker comment card speaking
24   opportunity, can you speak directly to Mr. Zane?
25        A   You can, but you're there to address the entire
```

Ex. P 006

Christopher Garnier 11/27/2018

1  board and the cabinet.
2      Q   All right.  Did you ask the board for a
3  face-to-face meeting about the subjects that you were
4  interested in?
5      A   Multiple times.
6      Q   And did they ever give it to you?
7      A   Never.
8      Q   All right.
9      A   That's not true.
10         Kimberley Beatty always would give me a
11 meeting, and Charles Sellers would always give me a
12 meeting.
13         At the time, though, T.J. Zane would never
14 respond to me, and neither would Michelle O'Connor, and
15 at the time, there was a gentleman there by the name of
16 Andy Patapow, and he would never respond either.
17     Q   Did you send e-mails on the e-mail system to
18 T.J. Zane?
19     A   Multiple.
20     Q   All right.  Did you have any other method,
21 other than direct communication, e-mail, and the U.S.
22 mail, to communicate with the board?
23     A   Nope.  Those are the -- well, those are the
24 public places that you can communicate.  It would be
25 100 percent inappropriate to try to contact them in a

Christopher Garnier  11/27/2018

1    Q    And how did you learn that you were blocked
2  from her Facebook account?
3    A    The same way that I learned that I was blocked
4  from Mr. Zane's.
5    Q    Okay.  At some point, were you blocked from her
6  Twitter account?
7    A    I was.
8    Q    How did you learn about that?
9    A    In the same capacity.  I went to tweet or send
10 a tweet or -- I don't even know what the term is --
11 respond on her Twitter feed and I was unable to.
12   Q    And about when was that?
13   A    I would say after 2016.  Between 2016 and 2017.
14   Q    Okay.  Did you ever send e-mails to
15 Michelle O'Connor-Ratcliff?
16   A    Multiple.
17   Q    And did you attempt to set a meeting by
18 speaking to her at a board meeting?
19   A    Numerous times.
20   Q    Was there any particular information that you
21 wanted to communicate to either of these board members
22 on their Facebook or Twitter accounts that you were not
23 able to communicate in some other manner?
24   A    So clarification of your question.
25   Q    Sure.

Christopher Garnier  11/27/2018

1    A   You're asking me could I have communicated
2    through them -- through e-mail or telephone or something
3    of that nature?
4    Q   Yeah.  Is there anything that you wanted to
5    communicate that you were not able to communicate
6    through some other medium?
7    A   I would say no, I mean, if we're including --
8    if you're including e-mail and obviously a phone call,
9    but again, being a constituent, you're hoping to get
10   some kind of response.
11   Q   Okay.  And --
12   A   And, Mr. Sleeth, let me say this:  Before I
13   even attempted to contact them on their social media
14   pages, there were multiple times where I just tried to
15   contact them on their Poway Unified School District
16   e-mail accounts with no avail.
17   Q   They did not respond?
18   A   Yes, sir.
19   Q   All right.  And is it true, then, that you
20   began using the Facebook account to try to communicate?
21   A   Yes, sir.
22   Q   And I think you answered this, but is there
23   some idea, some concept, some contact information that
24   you were not ever able to communicate to them?
25   A   I would assume not, but you never know if

Christopher Garnier  11/27/2018

1   <mark>you're communicating if you never get a response.</mark>
2   Communication is a two-way street, sir.
3       Q   Did you know Michelle O'Connor-Ratcliff before
4   she was elected?
5       A   Never knew who she was.
6       Q   All right.  Is there any particular issue that
7   you wanted to communicate to her through her Facebook
8   account?
9       A   The same -- same message, things pertaining to
10  our former disgraced superintendent.
11      Q   Let's look at some documents.
12      A   Yes, sir.
13      Q   I'm going to mark -- I guess I'm going to mark
14  a clean one here -- a copy of your complaint.  I'm going
15  to mark that as Exhibit 1.
16      A   Okay.
17          (Exhibit 1 was marked.)
18  BY MR. SLEETH:
19      Q   And hand that to you.
20          Have you seen that before?
21      A   Yes, sir.
22      Q   Did you authorize your attorney to file this on
23  your behalf?
24      A   I did, sir.
25      Q   Would you -- there's some exhibits on the back

Ex. P 010

Christopher Garnier  11/27/2018

```
 1      Q    What other Facebook -- I guess the word is
 2   "accounts."
 3           What other Facebook accounts did you post
 4   messages on directed to T.J. Zane?
 5      A    Well, if this person told me that they weren't
 6   Zane then I probably went back and said, oh, didn't
 7   understand that, but the only -- the only thing that I
 8   ever would have posted would be to -- to Zane, that --
 9   can you re -- reask your question?
10      Q    Did you post messages to Zane on other people's
11   Facebook accounts?
12      A    Yes, sir.
13      Q    And how many other people?
14      A    I don't know, sir.
15      Q    All right.  If you look at -- it turned
16   sideways for some reason -- 12.
17      A    Right.
18      Q    Is that a Facebook post that you did?
19      A    Yes, sir.
20      Q    Is that your picture there?
21      A    Yes, sir.
22      Q    All right.  And are you confident you posted
23   that?
24           You --
25      A    Yes, sir.
```

Christopher Garnier, 11/27/2018

```
1   State of California        )
2                              )        ss
3   County of San Diego        )
4
5           I, JUDY M. REIERSEN, CSR No. 7505, duly
6   licensed and qualified in and for the State of
7   California, do hereby certify that there came before me
8   on the 27th of November, 2018, at 2488 Historic Decatur
9   Road, Suite 200, San Diego, California, the following
10  named person, to-wit Christopher Garnier, who was duly
11  sworn to testify the truth, the whole truth, and nothing
12  but the truth of knowledge touching and concerning the
13  matters in controversy in this case; and that he was
14  thereupon examined under oath and his examination
15  reduced to typewriting under my supervision; that the
16  deposition is a true record of the testimony given by
17  the witness.
18          I futher certify that pursuant to FRCP
19  Rule 30(e)(1) that the signature of the deponent:
20          (X) was requested by the deponent or a
21  party before the completion of the deposition;
22          ( ) was not requested by the deponent of a
23  party before the complete of the deposition.
24          I further certify that I am neither attorney
25  or counsel for, nor related to or employed by any of the
```

80

Ex. P 012

Christopher Garnier, 11/27/2018

1  parties to the action in which this deposition is taken,
2  and further that I am not a relative, employee of any
3  attorney or counsel employed by the parties hereto, or
4  financially interested in the action.
5         CERTIFIED TO BY ME on this _6th_ day
6  of _December_, 2018
7
8
9
10
                                _Judy_
11
                        JUDY M. REIERSEN
12                      CSR No. 7505
13
14
15
16
17
18
19
20
21
22
23
24
25