# EXHIBIT "Q"

Ex. Q 014

Kimberly Garnier  11/19/2018

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF CALIFORNIA

3

4    CHRISTOPHER GARNIER; and KIMBERLY      )
     GARNIER,                               )
5                                           )
                   Plaintiffs,              )
6                                           )
          v.                                )Case No.:
7                                           )3-17-CV2215W JLB
     POWAY UNIFIED SCHOOL DISTRICT;         )
8    MICHELLE O'CONNOR-RATCLIFF; T.J.       )
     ZANE; and DOES 1 through 100,          )
9                                           )
                   Defendants.              )
10   _____)

11

12

13

14                        -o0o-

15

16        VIDEOTAPED DEPOSITION OF KIMBERLY GARNIER,

17   taken by the attorney for the Defendants,

18   commencing at the hour of 9:59 a.m. on Monday,

19   November 19, 2018, at 2488 Historic Decatur Road,

20   Suite 200, San Diego, California, before

21   Bridget L. Mastrobattista, Certified Shorthand

22   Reporter No. 7715, RPR, RMR, CRR, in and for the

23   State of California.

24

25

Ex. Q 015

Kimberly Garnier, 11/19/2018

```
1    State of California      )
2                             )     ss
3    County of San Diego      )
4
5         I, BRIDGET L. MASTROBATTISTA, CSR No. 7715,
6    RPR, RMR, CRR, duly licensed and qualified in and
7    for the State of California, do hereby certify that
8    there came before me on the 19th day of November,
9    2018, at 2488 Historic Decatur Road, Suite 200,
10   San Diego, California, the following named person,
11   to-wit KIMBERLY GARNIER, who was duly sworn to
12   testify the truth, the whole truth, and nothing but
13   the truth of knowledge touching and concerning the
14   matters in controversy in this case; and that he was
15   thereupon examined under oath and his examination
16   reduced to typewriting under my supervision; that
17   the deposition is a true record of the testimony
18   given by the witness.
19            I further certify that pursuant to FRCP
20   Rule 30(e)(1) that the signature of the deponent:
21            (X) Was requested by the deponent or a
22   party before the completion of the deposition;
23            ( ) was not requested by the deponent of a
24   party before the completion of the deposition.
25            I further certify that I am neither
```

84

Peterson Reporting Video & Litigation Services

Ex. Q 016

Kimberly Garnier, 11/19/2018

1    attorney or counsel for, nor related to or employed
2    by any of the parties to the action in which this
3    deposition is taken, and further that I am not a
4    relative, employee of any attorney or counsel
5    employed by the parties hereto, or financially
6    interested in the action.
7          CERTIFIED TO BY ME on this 27th day of
8    November, 2018.
9
10
11          BRIDGET L. MASTROBATTISTA
            CSR No. 7715, RPR, RMR, CRR
12
13
14
15
16
17
18
19
20
21
22
23
24
25

85

Ex. Q 017

Kimberly Garnier  11/19/2018

```
1          A     Maybe 2016.  I can't quite remember when
2     T.J. and Michelle blocked me.
3          Q     Let's take 2016.
4          A     Okay.
5          Q     In 2016 but before you filed papers to run
6     for office --
7          A     Yes, sir.
8          Q     -- did you ever attend a board meeting?
9          A     Yes, sir.
10         Q     How frequently did you attend
11    board meetings?
12         A     During that time period, I rarely missed a
13    board meeting.
14         Q     And we're talking about 2016, we agree,
15    right?
16         A     Yes, sir.
17         Q     Does the Poway board have a system that
18    permits people to communicate in a public comment
19    portion of the board meeting?
20         A     Not communicate per se.  There's not a
21    dialogue.  You're able to make a presentation.
22         Q     And what do you need to do to make the
23    presentation?
24         A     Come to a board meeting, submit a speaker
25    slip; and you're able to give a three-minute -- up
```

Ex. Q 018

Kimberly Garnier  11/19/2018

1    to three-minute report.

2         Q    Did you -- in 2016, did you do that?  Did

3    you communicate -- did you make a presentation --

4         A    Yes, sir.

5         Q    -- to the board?

6         A    Yes, sir.

7         Q    How many times?

8         A    Frequently.  I cannot estimate a number.

9         Q    How often does the board meet?

10        A    Once a month on most months.

11        Q    So they may skip a summer month?

12        A    I believe they skip two months during the

13   summer; then they have special meetings throughout.

14        Q    Okay.  Ever attend a special meeting?

15        A    Yes, sir.

16        Q    Do you believe that you attended

17   12 meetings in 2016?

18        A    No, sir.  Probably --

19        Q    With specials and regulars?

20        A    I would say that would be a close number,

21   but I can't say exactly.

22        Q    Okay.  And how many times did you present

23   a speaker slip and make a presentation to the board?

24        A    Frequently.  I don't know if it was every

25   time, though.

Ex. Q 019

Kimberly Garnier  11/19/2018

1      Q     Is there any information that you were not
2   able to communicate to the board during 2016 as the
3   result of being blocked on Facebook?
4      A     Can you repeat that question, please?
5            I want to make sure I understand it.
6      Q     Is there an idea or a concept or a
7   position that you wanted to communicate to the board
8   that you weren't able to communicate to the board
9   because you were blocked from Facebook?
10     A     Yes, sir.
11     Q     What idea?
12     A     Mainly my concerns about John Collins.
13     Q     Did you ever speak to the board, make a
14  presentation about John Collins?
15     A     Yes, sir.
16     Q     What part of your concerns about
17  John Collins were you not able to present to the
18  board at one or more of those meetings because you
19  were blocked?
20     A     Issues in regards to finances and
21  wrongdoing.
22     Q     How do you think you would have been more
23  able to prevent information about finances or
24  wrongdoing if you'd had access to the Facebook
25  accounts?

Ex. Q 020

Kimberly Garnier  11/19/2018

1        A     There's a lack of access to elected

2    officials at board meetings.  You can speak, and it

3    could fall on deaf ears.  Having access to social

4    media where it's a give-and-take, you're able to go

5    further and -- it's a back-and-forth.  That's what I

6    would say.  Whereas the board meetings, it's just

7    laying it out there.

8        Q     In a public presentation at a board

9    meeting can a member of the public bring

10   demonstrative exhibits of some kind?

11       A     I don't know what the policy is on how

12   that can be done.  I just can't speak to that.

13       Q     Was there some kind of a financial list

14   that you wanted to present on Facebook that you

15   couldn't put on a board, on a -- printed out on a

16   board and bring it to the board meeting?

17       A     That wasn't what I had intended to do,

18   so I --

19       Q     Is there some reason that you couldn't

20   do that?

21       A     Couldn't --

22       Q     Bring a demonstrative exhibit on to --

23   blown up on a board?

24            MR. BRIGGS:  Objection.  Calls for

25   speculation.

Peterson Reporting Video & Litigation Services              26

Ex. Q 021

Kimberly Garnier  11/19/2018

1      Q     Did you ever attempt to -- you said you

2    have a good relationship with two board members.

3    Who are they?

4      A     Yes, sir.

5            Kimberly Beatty and Charles Sellers.

6      Q     Did you -- did you ever post on either of

7    their Facebook accounts the same political message

8    that you attempted to post on T.J.'s account?

9      A     Their Facebook pages are private.  And

10   T.J. and Michelle's Facebook pages said official

11   government page.  And so my political questions went

12   to those pages.

13           And I also email board members on their

14   PUSD accounts if I had issues as well.

15           But, I did not post anything political, to

16   my best memory, on any other board members' Facebook

17   pages because they were personal pages.

18     Q     So, Ms. Beatty.  Mr. Sellers.

19           And is that Ms. Patel?

20     A     Yes, sir.

21     Q     Each have -- each do not have a public

22   Facebook account?

23     A     I don't know what the current status is of

24   that, but at the time I don't remember them

25   having -- yeah, I don't remember them having a page.

Ex. Q 022

Kimberly Garnier  11/19/2018

1    Poway USD account.

2         Q    Were you able -- were you ever blocked

3    from sending a message to T.J. Zane at his Poway

4    email address?

5         A    I can't confirm but -- that I was blocked.

6    But, on occasion, after sometimes more significant

7    events at the School District, there would be, you

8    know, some reason why an email wouldn't go through,

9    so...

10        Q    To T.J. Zane or just in general?

11        A    Different Poway USD accounts.  They would

12   come back to my email saying "undeliverable" or

13   something to that effect.

14        Q    During 2016, were you ever able to send an

15   email to T.J. Zane?

16        A    Yes, sir.

17        Q    Did you send him political messages by

18   email that you believe got through?

19        A    Possibly.  However, T.J. Zane almost

20   exclusively had an "out of office" reply.  So his

21   Poway, at Poway USD email, almost exclusively and

22   he's notorious for his emails coming back saying:

23   "I'm out of the office.  If you have an issue,

24   please contact somebody else."

25             So it was an even ineffective way to

Peterson Reporting Video & Litigation Services                34

Ex. Q 023

Kimberly Garnier  11/19/2018

1   communicate with him.

2        Q     How about Michelle?

3        A     To my understanding, Michelle's emails

4   would most often go through to her.

5        Q     Did you send Michelle political messages

6   by email?

7        A     Political in terms of?

8        Q     Something with political content to it.

9        A     Yes, sir.

10       Q     I don't want to ask about your kids or

11  your kids' education or anything like that.

12       A     Sure.

13       Q     Okay.  We're here interested in First

14  Amendment speech issues.  And I want to find out --

15  I want to ask about ways that you could communicate

16  to board members.

17       A     Yes, sir.

18       Q     Or to the board as a whole.

19       A     Yes, sir.

20       Q     Did you email -- foundation question:

21             In 2016, who was the superintendent?

22       A     I think 2016 is the year that John Collins

23  started as the superintendent and then was fired in

24  2016, and then we had interim superintendents after

25  his departure.

Ex. Q 024

Kimberly Garnier  11/19/2018

1    BY MR. SLEETH:

2         Q     **The same thing you would have posted on**

3    **Facebook, were you able to send it on email?**

4         A     Are you asking me that direct question

5    right now?

6         Q     **Yes.**

7         A     Was I able to send it in email, let's see.

8               I would say generally.  But, again,

9    T.J. Zane, to my knowledge, didn't even look at his

10   Poway USD email account.

11        Q     **Did you send emails about policy issues or**

12   **political issues to the first interim**

13   **superintendent, Eddie Velasquez?**

14        A     I can't quite remember.  I know we

15   communicated.  We met with him.  I just can't

16   guarantee that an email wasn't a friendly welcoming

17   email versus a question regarding policy.  I can't

18   remember what was in an email and what was not.

19        Q     **Was there anybody else who was an interim**

20   **superintendent in '16?**

21        A     I believe Mel Robertson was an interim

22   superintendent in 2016.

23        Q     **Did you communicate with her by email**

24   **ever?  Not about your kids.**

25        A     Well, we sent emails.  I don't remember

Ex. Q 025

Kimberly Garnier  11/19/2018

1    to something that you did or happened to you and

2    something that happened to your husband.

3         A    Yes, sir.

4         Q    So some of these documents may not relate

5    to you.

6         A    Okay.

7         Q    All right.  So let's just shuffle through

8    them, and maybe we can go to lunch.

9              Looking at Exhibit 2, page 1, what -- is

10   that a document that you've ever seen before?

11        A    Yes, sir.

12        Q    And what is that?

13        A    This is a Facebook page that I created

14   called Poway Unified School District Coalition

15   Against Corruption.  And this looks to be one of the

16   last posts if not the last post that I put.

17        Q    Okay.  So explain to me and the judge, who

18   is probably going to be as old as I am:  Who can

19   access this Facebook?

20        A    I believe that I'm the only person, but to

21   confirm that I would have to look at who is on the

22   admin.  But, if it's not just me, I'm by far the

23   biggest poster.

24        Q    So you -- is this a new Facebook account

25   that you created?

Ex. Q 026

Kimberly Garnier  11/19/2018

1          A        That's correct.

2          Q        And you called it this Poway Unified

3     School District Coalition Against Corruption.

4          A        Correct.

5          Q        Okay.   If I ran and grabbed a computer and

6     got on Facebook, could I access this?

7          A        I believe so.

8          Q        Could I make a comment on it?

9          A        I believe so.

10          Q        Do people comment on your site?

11          A        Yes, sir.

12          Q        All right.   Identify for me how many pages

13     here relate to that particular site.

14                   MR. BRIGGS:   Are they numbered at the

15     bottom?

16                   THE WITNESS:   Yeah.   Should I go through

17     and make sure each one is corresponding with the --

18     BY MR. SLEETH:

19          Q        Yeah, I think you should.

20          A        With this particular site.

21          Q        Maybe all of them?

22          A        I can just go to the back if you prefer.

23     I can trust that all of these are marked with the

24     same.   It looks like 47 pages.   And from what I've

25     gone through thus far, they all are from Poway

Ex. Q 027

1    Unified School District Coalition Against Corruption

2    Facebook page.

3        Q     Is any of the information that you put on

4    here information that you would have put on the

5    Facebook pages from which you were blocked?

6        A     Yes, sir.

7        Q     So is this the same kind of information?

8        A     Yes, sir.

9        Q     Can you show me something here that would

10   indicate that somebody else posted on this so I see

11   what it looks like?

12       A     I didn't see anything that anyone else

13   posted.

14             MR. BRIGGS:  Yeah, go to page 11.

15             THE WITNESS:  Oh.

16             Those are comments underneath.

17             MR. BRIGGS:  Isn't that what you were

18   asking, Jack?

19             MR. SLEETH:  Yeah.

20             THE WITNESS:  Oh, I'm sorry.

21   BY MR. SLEETH:

22       Q     That somebody else posted on here?

23       A     The post originate from the person who has

24   control, if you will, of the Facebook page.  And

25   then from there people can comment on it.  So there

Ex. Q 028

Kimberly Garnier  11/19/2018

1      Q      Can they take it and share it, both the

2  post and the comment?

3      A      They can share a post, but I don't believe

4  the comments come with that.

5      Q      Okay.  And can you move it across?

6             Can you take something off of Facebook and

7  put it on Twitter?

8      A      I believe so, yeah.

9      Q      Okay.  This has nothing to do with the

10  litigation.  I'm just learning stuff.

11             I don't know what else.  I can't see

12  anything else important that I want to ask you about

13  this.

14             Is there anything else in here that you

15  think is important to your relationship with the two

16  board members who are defendants in this lawsuit?

17      A      Just quite a bit has to do with some of

18  their decision-making and just the overall issues at

19  the school that I can't communicate with them about.

20      Q      Okay.  On the first page of this --

21      A      Where are we looking now?  That looks

22  different than mine.  I'm sorry.  I have bad eyes.

23  I apologize.

24      Q      I'm looking at John Collins' repayment

25  spreadsheet.  Where did you get this information?

Ex. Q 029

Kimberly Garnier  11/19/2018

```
 1        A       I did a Public Request Act to Mr. Darl
 2   Danford of Poway Unified.
 3        Q       And the District provided you with this
 4   information?
 5        A       That's correct.
 6        Q       All right.  Was there any method that you
 7   know of that you could have used to communicate that
 8   information back to the board members at a board
 9   meeting?
10        A       I could give an oral presentation and
11   present this to them.  Hopefully, this is something
12   that they're already aware of.
13        Q       If you put this on a thumb drive and took
14   it down to them and said, "Would you put this on
15   your screen at a board meeting?" would they do that?
16        A       We've run into problems with that sort of
17   thing before, so I don't know where it currently
18   stands.  I don't know if they would allow that.
19   They've made a lot of changes.
20        Q       Could you go down to Kinko's and blow this
21   up on a piece of board and take the board in and
22   show it to them?
23        A       I know I could go to Kinko's and put in on
24   the board.  I don't know if they would allow that.
25        Q       Did you ever try?
```

Ex. Q 030

Kimberly Garnier  11/19/2018

1      A      "Black Marine Pilot called 'Boy', Punished
2   for Reporting it."
3      **Q      Yeah.**
4      A      I wouldn't be able to tell you from this.
5   I wouldn't be able to tell you what is just
6   reprinted.  It's a little unclear versus how many
7   times I posted it.  But I likely did post it on a
8   couple of different comments.  Certain people might
9   be tagged in one of her posts and to share the
10  message with her, as well as make it public for
11  others to see.
12          It would make sense to post it on a
13  variety of her -- to comment on a variety of her
14  posts.  But I can't tell from this, and I don't have
15  a recollection of how many times I posted it.
16     **Q      Isn't it true that you posted this same --**
17  **that you commented with this same interview 15 or**
18  **20 times?**
19     A      I don't believe I did.  I can't give you
20  an exact number.  But, like I said, the Facebook
21  being social media, the goal is to get the message
22  out.  That's the point of social media.
23          So communicating with Michelle O'Connor as
24  an elected official, trying to get her to respond to
25  things that are uncomfortable for her, we would post

Ex. Q 031

Kimberly Garnier  11/19/2018

1    it in a variety of avenues and social media

2    platforms.

3         Q    If I count the number of times I see this

4    just on these pages --

5         A    Yes, sir.

6         Q    -- I go one on page 86 I see it again.

7              On 87 I see it again.  On 89 I see it

8    again.  On 90 I see it again.  If I count those, I

9    get 12 times.

10             Is that 12 postings, or is there some

11   repetition somewhere?  Comments.

12             Is it 12 commenting?

13        A    I don't know.

14        Q    Commentations?

15        A    I don't know.

16             If I could have a moment to review this.

17             MR. SLEETH:  Sure.

18             MR. BRIGGS:  Let me just put out an

19   objection for lack of foundation because these

20   aren't the witness's pages.

21             MR. SLEETH:  Okay.

22             MR. BRIGGS:  But I just state that for the

23   record.  Go ahead and look, and answer if you can.

24             THE WITNESS:  I'm kind of confused.  I

25   can't tell.  If I could see the whole thread, if you

Ex. Q 032