1  BRIGGS LAW CORPORATION [FILE: 1891.03]
   Cory J. Briggs (State Bar no. 176284)
2  cory@briggslawcorp.com
   99 East "C" Street, Suite 111
3  Upland, CA 91786
   Telephone: 909-949-7115
4
   Attorneys for Plaintiff Christopher Garnier
5        and Kimberly Garnier

6

7

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11  CHRISTOPHER   GARNIER;   and )  Case No.: 3:17-CV-2215-W-JLB
    KIMBERLY GARNIER,            )
12                               )  **PLAINTIFFS' BRIEF IN
                                 )  OPPOSITION TO DEFENDANTS'
        Plaintiffs,              )  MOTION FOR SUMMARY
13                               )  JUDGMENT; DECLARATIONS OF
        vs.                      )  CHRISTOPHER GARNIER,
14                               )  KIMBERLY GARNIER, NORA
    POWAY UNIFIED SCHOOL DISTRICT; )  PASIN, AND CORY J. BRIGGS;
15  MICHELLE O'CONNOR-RATCLIFF; T.J. )  OPPOSITION EXHIBITS**
    ZANE; and DOES 1 through 100, )
16                               )
        Defendants.              )  Action Filed:  October 30, 2017
17                               )  Courtroom:      3C (Whelan)

18                                  Hearing Date:   March 25, 2019
                                    Hearing Time:   Unknown
19

20

21        Plaintiffs Christopher Garnier and Kimberly Garnier respectfully submit this brief

22  in opposition to the motion for summary judgment filed by Defendants T.J. Zane ("Zane")

23  and Michelle O'Connor-Ratcliff ("MOR").

24

25

26

27

28

**Table of Contents**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   ARGUMENT AND ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.    Plaintiffs Have Suffered Injury to Establish Standing. . . . . . . . . . . . . . 7

     B.    Defendants Acted under Color of State Law . . . . . . . . . . . . . . . . . . . . . . 8

     C.    Defendants' Social-Media Websites Are Public Forums . . . . . . . . . . . 9

     D.    The Doctrine of Qualified Immunity Does Not Apply . . . . . . . . . . . . . 10

V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## <u>Table of Authorities</u>

<u>Judicial Authority</u>

*American Fire, Theft & Collision Managers, Inc. v. Gillespie,*
    932 F.2d 816 (9th Cir.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Anderson v. Creighton,*
    483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Blair v. Bethel Sch. Dist.,*
    608 F.3d 540 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Davison v. Randall,*
    915 F.3d 666 (4th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 12

*Gonzaga University v. Doe,*
    536 U.S. 273 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hartman v. Moore,*
    547 U.S. 250 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hope v. Pelzer,*
    536 U.S. 730 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kindt v. Santa Monica Rent Control Bd.,*
    67 F.3d 266 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Knight First Amendment Inst. at Columbia Univ. v. Trump,*
    302 F. Supp. 3d 541 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mulligan v. Nichols,*
    835 F.3d 983 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Norse v. City of Santa Cruz,*
    629 F. 3d. 966 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Packingham v. North Carolina,*
    137 S.Ct. 1730 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

*Pearson v. Callahan,*
    555 S. Ct. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pinard v. Clatskanie School Dist. 6J,*
    467 F.3d 755 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Reza v. Pearce,*
    806 F.3d 497 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1
2

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3

<u>Rules</u>

4
5

FED. R. CIV. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

This motion should be denied in its entirety. Plaintiffs' First Amendment rights have been violated by Zane and MOR, who have used their official, public-office-related social-media websites (Facebook and Twitter) to restrict Plaintiffs from expressing criticisms of MOR and Zane and communicating that criticism where their fellow constituents can easily read it.

Plaintiffs live within the jurisdictional boundaries of, and have children who attend school within, the Poway Unified School District ("PUSD"). As constituents of PUSD, Plaintiffs did not stay silent when the former superintendent was found to have been wrongfully misusing public funds. Plaintiffs were vested in how the details of the former superintendent's actions and subsequent departure would affect their community moving forward. They wanted to communicate with PUSD board members concerning this issue and air other concerns they had with the handling of this and other important matters at PUSD.

PUSD board members Zane and MOR utilize public-office-related social-media platforms to communicate with their constituents. They use their Facebook websites to promote their roles as public officials and disseminate information concerning and related to PUSD by authoring PUSD-related Facebook content known as "Posts." The majority of these Posts deal with numerous aspects of MOR and Zane's roles as PUSD board members. Years ago, in response to Zane and MOR's PUSD-related Posts, Plaintiffs could voice their concerns regarding PUSD-related issues by commenting on these Posts. Unfortunately for Plaintiffs, because they were critical of Zane and MOR, Defendants chose to retaliate against them for their critiques by prohibiting them from further commenting on Defendants' official PUSD-related Facebook Posts.

Apart from the technical apparatus used to silence Plaintiffs, what Zane and MOR have done is no different from allowing a critical member of the public to attend a public meeting but permanently banning him or her from speaking at the meeting due to past criticisms of Zane and MOR as elected public officials. Silencing critics has long been recognized as unconstitutional.

The Supreme Court recognized in 2017 that social media have become "the modern public square" and "can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, – U.S. –, 137 S.Ct. 1730, 1737 (2017). Likewise, the Southern District of New York has ruled that a personal Twitter account is a designated public forum if it is used as an "interactive space" in which users can engage with a public official by writing comments on statements posted by the official and other users can post responses to comments from other users. *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 574-575 (S.D.N.Y. 2018). More recently, the Fourth Circuit Court of Appeals similarly concluded that the interactive nature of a public official's Facebook account rendered it subject to analysis as a public forum. *Davison v. Randall*, 915 F.3d 666, 681-683 (4th Cir. 2019).

Zane and MOR targeted Plaintiffs for their past criticisms of Zane's and MOR's performance in public office and fitness for governing PUSD. These comments constitute speech that occupy the core of the protection afforded by the First Amendment. Acting in an official capacity, Zane and MOR knowingly and actively chose to prohibit Plaintiffs from critical speech in violation of the First Amendment.

## II. STATEMENT OF FACTS

Social media serve as online interactive platforms that have created avenues for dialogue among private individuals and their elected officials. Facebook, an online social-media platform created in 2004, is not an online bulletin board where only one-way communication exists. Facebook's official mission statement is to "give people the power to build community and bring the world closer together." Community is built specifically through interactions that occur between individuals on Facebook. If Defendants were truly interested in creating nothing more than an online bulletin board, social-media websites would not have been their chosen platforms.

The administrator of a public official's Facebook website can author Posts to inform constituents of official news and updates. Each Post creates its own separate pocket of dialogue, analogous to an announcement at PUSD board meeting, where the

1  public official makes an announcement and constituents have the opportunity to respond.
2  Underneath each Post, viewers can leave a comment to the Post or engage in dialogue
3  with other individuals within that specific Post by commenting on someone else's prior
4  comment. Anyone can engage in this interactive portion underneath each Post, unless he
5  or she has been specifically banned or "blocked" by the page's administrator (as
6  happened here to Plaintiffs).

7      Writings on Facebook are not just thrown randomly onto the webpage, like a
8  bulletin board where the first flyer tacked up can be buried underneath other papers.
9  Rather, it is specifically designed to allow for communications among all users within
10  selectively placed boxes and spaces for comments and reactions. Facebook automatically
11  alters the placement and indentations of comments to show a clear and user-friendly way
12  to identify original Posts by the administrator of a page, comments underneath the Post,
13  and comments in response to other comments. Communications underneath one Post are
14  kept separate from communications underneath another Post. Each Post essentially holds
15  underneath it a separate set of communications (the interactive section of the Post).
16  Longer comments do not disrupt the flow of a Facebook page's Posts, as Facebook will
17  automatically shorten longer comments, showing only a preview of the comment and
18  allowing those interested to selectively view the entirety of the comment by clicking
19  "more."

20      Generally, Facebook automatically sorts comments underneath each Post by "most
21  relevant" where the most engaging comments and comments created by mutual friends
22  are shown first. Viewers have the option to change this setting to display a Post's
23  comments in order of "most recent" or "all comments." Understandably, some
24  constituents may have more to share than others. If it were plausible for comments to
25  disrupt or bury out original Posts by administrators, Facebook would most likely not be
26  a chosen avenue for so many public officials and public entities as a way to interact and
27  build community with constituents.

28      Twitter is another common social-media platform often used by public officials
   to interact with constituents. Twitter lists its values on the webpage, stating that it

believes in "free expression" and that "every voice has the power to impact the world." Like Facebook, Twitter is also specifically designed and shaped to create an interactive space between an administrator's writings and viewers' comments. On Twitter, comments are kept separate from original writings, known as "Tweets." Users who want to engage in dialogue in response to a Tweet have to actively select to see the comments and join in communications in response to the specific Tweet and in response to one another's comments. The interactive portion of each Tweet is not initially shown unless one chooses to view and join the interactive portion. As such, responsive comments can never disrupt or bury the original Tweet.  When people are blocked on a Twitter page, not only can they no longer join the interactive portion of the Twitter page, but they can no longer view any written Tweets or anything else on the administrator's Twitter page.

Zane utilizes multiple Facebook webpages for different purposes.  He separates his personal page used to interact with close friends and family from his public-office-related Facebook page where he authors Posts concerning PUSD matters. Zane's public office related Facebook page identified him as a "Government Official" on the Page's official label.  The page displayed a cover photo across the top showing PUSD signage. Across the photo in large font read "T.J. Zane, Poway Unified School District Trustee." Under the About section of the Facebook page, Zane identified the website as "the official page for T.J. Zane, Poway Unified School District Board Member, to promote public and official information." The majority of the content on Zane's Facebook page concerns non-political PUSD updates and related PUSD information. All viewers can comment and react in the interactive portion underneath each Post, except for Christopher Garnier, who no longer has the option to comment or react to any past, present, or future Posts by Zane.

Zane claims that he does not prohibit Mr. Garnier from being able to participate in the interactive portions of his Facebook page.  This is false.  Mr. Garnier no longer has the ability to comment or react within these interactive portions underneath Zane's Posts and effectively has been forever silenced in this modern public square frequented by Zane.

MOR utilizes two separate Facebook pages, a private one for friends and family and her public-office-related Facebook page where she authors Posts concerning PUSD matters.  This Facebook page identifies her as a "Government Official."  Under the About section of the page, MOR listed her "Current Office" as "Board of Education, President, Poway Unified School District."  MOR also provided her official PUSD e-mail address, "moconnorratcliff@powayusd.com," in the About section of her Facebook page.

The majority of MOR's Posts on this Facebook page concern PUSD updates and related information. All viewers can comment and react in the interactive portion underneath each Post, except for Christopher Garnier and Kimberly Garnier, who no longer have the option to comment or react to any past, present, or future Posts by MOR. MOR actively encourages constituents who praise her to engage in the interactive portion underneath her Posts by reacting with a "Like" on positive comments and responding to positive comments. Prior to banning Plaintiffs from interacting underneath MOR's Facebook Posts, MOR would "hide" Plaintiffs' comments, meaning that the comments were not visible to any other viewers of her Facebook page.

Defendants contend that their Facebook pages are campaign pages, not public-office-related pages.  But their Facebook pages tell a very different story.  The pages are primarily if not entirely devoted to PUSD-related matters and make no reference to any political campaign.

In addition to banning Plaintiffs from interacting within dialogues on her public-office-related Facebook page, MOR has blocked Mr. Garnier from her public-office-related Twitter account. On her Twitter account she identifies herself as a member of the PUSD Board of Education.  She "Tweets" and "Re-Tweets" information concerning PUSD affairs on her Twitter account.  Unfortunately, she has blocked Mr. Garnier from her Twitter account, permanently prohibiting him from joining the interactive portions of her Twitter conversations and preventing him from viewing anything she Tweets.

Defendants' claim that Plaintiffs were disrupting their social-media pages and burying their Posts is not only inaccurate but implausible given the working mechanics

of Facebook and Twitter.  The truth is that Zane and MOR actively chose to exclude Plaintiffs from the interactive portions of their public-office-related social-media pages, before knowing what Plaintiffs intended to communicate, while constituents who praised Zane and MOR were able to actively share their ideas and engage in communications concerning PUSD.

## III. LEGAL STANDARDS

The party moving for summary judgment has both an initial burden of production and the ultimate burden of persuading the Court that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  Alternatively, the moving party may demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  *Id*.  To avoid summary judgment, the opposing party must demonstrate a "genuine" dispute as to any "material" fact on all matters as to which it has the burden of proof.  *Id*. at 324.

## IV. ARGUMENT AND ANALYSIS

In their opening brief, Defendants claim that Plaintiffs do not have standing to sue, that Defendants were not acting under color of state law, that social media are not public fora, and that Defendants enjoy qualified immunity.  Each of these points is disputed, both factually and as a matter of law.

Because the factual disputes are numerous and are already reflected in the parties' joint statement of disputed and undisputed facts, Plaintiffs will not dwell here on the disputed facts. Defendants' material facts are seriously disputed, and that alone prohibits

summary judgment.   In an abundance of caution, Plaintiff now turns to the legal arguments against summary judgment.

## A.   Plaintiffs Have Suffered Injury to Establish Standing

Instead of presenting a legitimate argument concerning standing, Defendants instead raise unsupported and outlandish claims of bad-faith litigation, alleging that Plaintiffs "relish" in litigation and take "pleasure" in being blocked from Defendants' social-media platforms.   Not only are the allegations preposterous, but there is also no lack of standing.

Neither Mr. Garnier nor Mrs. Garnier takes pleasure in or relishes having to sue Defendants.   Significantly, Defendants cite no authority for the proposition that a plaintiff's past litigation against a non-party eliminates standing to maintain a pending lawsuit.[1]   Even if they could, Mrs. Garnier had never been in litigation with PUSD, Zane, or MOR prior to this lawsuit.

A proper analysis shows that Plaintiffs have standing because they have suffered a cognizable injury: a restriction of their First Amendment rights.   Article III standing requires Plaintiffs to show that they suffered a concrete and particularized injury in fact, that the injury is fairly traceable to Defendants' challenged action, and that the injury will be redressed by a favorable decision.   *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).   Injury in fact is an invasion of a legally protected interest, that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Often, standing requirements, particularly the injury-in-fact requirement, are somewhat relaxed in First Amendment cases.   *Davison, supra*, 912 F.3d at 677-678.

Here Plaintiffs' right to exercise free speech to critique and air grievances regarding PUSD board members Zane and MOR within an open interactive forum has been restricted simply because Zane and MOR did not like what Plaintiffs had to say. Because Zane and MOR believe they can restrict constituents from joining interactive

---

[1]  Defendants do not claim that this lawsuit is barred by claim or issue preclusion.

communications within their public-office-related social-media platforms, they will continue to do so in violation of Plaintiffs' First Amendment rights.

### B.   Defendants Acted under Color of State Law

The elements of a Section 1983 case are the deprivation of any rights, privileges, or immunities secured by the Constitution and laws by a person acting under color of state law. *Gonzaga University v. Doe*, 536 U.S. 273, 285 (2002). A public official's conduct is more likely to amount to state action when it occurs in the course of performing an actual or apparent duty of his or office. Where a public official's private actions have a sufficiently close nexus between the conduct and public office and the private actions arose out of public, not personal, circumstances, the conduct constitutes conduct under color of state law. *Davison, supra*, 912 F.3d at 680.

Defendants insist they did not commit wrongs under color of state law because they claim to have been acting solely as private individuals with their Facebook and Twitter platforms. The fact that public officials choose to act beyond the scope of their duties in their free time does not insulate them from constitutional claims. Defendants specifically customized and displayed information on their Facebook and Twitter platforms to indicate they were acting within those platforms as public officials. Zane went as far as to include his PUSD board title in large letters across the cover of his Facebook page and described the page as "the official page for T.J. Zane, Poway Unified School District Board Member, to promote public and official information." MOR included her PUSD official email address as her contact information and listed her official role as PUSD board member in the "About" section of her Facebook page. In her Twitter account, MOR described herself as "President, Poway Unified School District Board of Education."

In addition to all the specific identifiers Defendants provided to display their social-media pages as relate to their public offices, the majority of content posted by Defendants is geared towards constituents of PUSD. Defendants consistently share images, videos, and news articles that relate specifically to PUSD students, staff, and the PUSD community. Defendants operated their social-media pages in a way purporting

1  to act under authority vested in them as public officials.  Blocking Plaintiffs from their

2  social-media websites in retaliation for past criticisms was done under color of law.

3          **C.    Defendants' Social-Media Websites Are Public Forums**

4          According to the Supreme Court, social media serve as important places for the

5  exchange of views and has compared social-networking websites to "the modern public

6  square." *Packingham, supra*, 137 S.Ct. at 1731; *see also Knight, supra*, 302 F. Supp. 3d

7  at 565-575. Social media have become vital platforms for speech of all kinds. Defendants

8  agree that utilizing social media has significantly helped them in sharing PUSD-related

9  updates.  Their designation of an interactive forum on PUSD-related matters, found

10 underneath their Posts and Tweets, for use by the public creates a forum for speech.

11         Plaintiffs have the right of free expression and the right to criticize the government

12 as guaranteed by the First Amendment. Restrictions on speech within a limited forum

13 must be reasonable and viewpoint neutral.  *Kindt v. Santa Monica Rent Control Bd.*, 67

14 F.3d 266, 271 (9th Cir.1995).  Individuals may only be removed from a designated

15 forum if they have actually disrupted the proceedings in the forum.  *Norse v. City of

16 Santa Cruz*, 629 F. 3d. 966, 976 (9th Cir. 2010).  To be completely removed and barred

17 from all opportunities to speak in retaliation of past public criticisms of a public official

18 exceeds the bounds of reasonableness and can be deemed a violation of an individual's

19 First Amendment rights.  *Reza v. Pearce*, 806 F.3d 497 (9th Cir. 2015).

20         Within this forum for speech, Plaintiffs were specifically targeted and retaliated

21 against based on their viewpoints.  As already discussed, allegations by Defendants that

22 Plaintiffs were disrupting their Facebook pages or burying out Posts are false.  There is

23 nothing to show that Plaintiffs prevented Defendants from accomplishing their business

24 or interfered with the rights of other participants of the interactive portions of the

25 Facebook pages.  Comments of a similar nature were placed underneath different Posts

26 to reach audiences within different interactive portions of the Facebook page, not

27 repetitively within the same dialogue as Defendants suggest.  Plaintiffs did not disrupt

28 the mechanics of the social-media pages in any way.  Further, Plaintiffs did not comment

1   any obscenities or threats of violence.  All comments dealt with PUSD and Defendants'

2   roles in PUSD-related matters.

3         Likewise, Defendants cannot claim their actions constitute reasonable time, place,

4   and manner regulations because Plaintiffs are blocked indefinitely, meaning that they

5   have been silenced from all future communications before anyone can know what the

6   future communications would entail.  Plaintiffs' critiques of Defendants on their public-

7   office-related social-media pages caused Defendants to retaliate against them and block

8   them from participating in interactive dialogues indefinitely.  Such conduct violated

9   Plaintiffs' right of free expression and their right to criticize the government as

10  guaranteed by the First Amendment.

11        **D.    The Doctrine of Qualified Immunity Does Not Apply**

12        Defendants attempt to hide their wrongful actions behind the protection of the

13  doctrine of qualified immunity. However, qualified immunity does not apply here for

14  two reasons.

15        First and foremost, Defendants' qualified-immunity defense fails because the

16  doctrine does not apply to claims for declaratory or injunctive relief.  *American Fire,*

17  *Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir.1991).  The

18  purpose of the doctrine is to provide protections from the burdens and risks of litigation,

19  which are "much diminished" in actions for equitable relief and "insufficient to justify

20  permitting qualified immunity to serve as a defense." *Id.*

21        Plaintiffs' complaint is for both damages and declaratory and injunctive relief.  As

22  such, even if qualified immunity were found to apply, the motion would still have to be

23  denied because the doctrine bars only damages.

24        Second, the doctrine is inapplicable to the damages portion of Plaintiffs' complaint

25  because it protects public officials from liability for civil damages only insofar as their

26  conduct does not violate clearly established statutory or constitutional rights of which

27  a reasonable person would have known.  *Pearson v. Callahan*, 555 S. Ct. 223, 231

28  (2009). It does not apply to Defendants because the wrongs committed violated clearly

    established rights recognized by controlling authorities.

The First Amendment protects an individual's right to criticize public officials. The Ninth Circuit has repeatedly ruled that retaliation for the exercise of one's First Amendment rights amounts to a constitutional violation. *See, e.g., Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010); *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). Indeed, the Supreme Court has itself ruled that public officials cannot retaliate against members of the public for speaking out. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Especially pertinent here is its pronouncement that "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Id.*

Defendants' argument for qualified immunity focuses on *where* the retaliation occurred – on social-media platforms – and thus erroneously misapplies the doctrine. Case law focuses on what the government officials are accused of doing, not where they did it. Moreover, there does not have to be a prior case squarely on point presenting similar material facts to show that a right was clearly established at the time of conduct; that "rigid gloss on the qualified immunity standard . . . is not consistent with" Supreme Court precedent. *Hope v. Pelzer*, 536 U.S. 730, 739 (2000). All that matters is that the "contours" of the constitutional *right* – not the fact pattern – have been clearly established. *Id.* If the rule were otherwise, public officials could continuously find new avenues and new fora to retaliate against constituents who criticize them and claim the protection of qualified immunity.

Thus, identifying a case in which "the very action in question has previously been held unlawful" is not required. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

The Ninth Circuit has held that the government may not target a specific member of the public due to criticisms and that individuals may openly express disagreement

with their public officials. *See, e.g., Norse v. City of Santa Cruz*, 629 F.3d 966, 976 (9th Cir. 2010).  That rule applies on social-media platforms as much as it applies at City Hall or in PUSD board meetings.  *See Knight, supra*, 302 F. Supp. 3d 541 (applicable to president's Twitter account); *Davison, supra*, 915 F.3d 666 (applicable to county official's Facebook account).

Defendants' unfamiliarity with the contours of the First Amendment in the modern era is simply unreasonable.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion and allow this lawsuit to proceed to trial.

Date: March 11, 2019.          Respectfully submitted,

BRIGGS LAW CORPORATION

By:   s/ Cory J. Briggs

Attorneys for Plaintiffs Christopher Garnier and Kimberly Garnier