BRIGGS LAW CORPORATION
Cory J. Briggs (State Bar No. 176284)
cory@briggslawcorp.com
99 East "C" Street, Suite 111
Upland, CA 91786
Telephone: 909-949-7115

Attorneys for Plaintiffs Christopher
Garnier and Kimberly Garnier

FILED
DEC 09 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                           DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER GARNIER; and KIMBERLY GARNIER, <br><br> Plaintiffs, <br><br> v. <br><br> POWAY UNIFIED SCHOOL DISTRICT; MICHELLE O'CONNOR-RATCLIFF; T.J. ZANE and DOES 1 through 1000, <br><br> Defendants. | Case No.: 3:17-CV-02215-W-JLB <br><br> **PRETRIAL CONFERENCE ORDER** <br><br> Judge:       Hon. Thomas J. Whelan <br> Dept.:       3C <br> Magistrate:  Jill L. Burkhardt <br> Dept.:       5th Floor <br><br> Action Date: October 30, 2017 <br> Trial date:  Not Set |

Pursuant to Local Rule 16.1(f)(6), Plaintiffs Christopher Garnier and Kimberly Garnier ("Plaintiffs"), hereby submit this proposed Pretrial Order; reviewed and approved by all parties listed in this action.

Dated: December 2, 2019                BRIGGS LAW CORPORATION


By: /s/ *Cory Briggs*
    Cory J. Briggs

Attorneys for Plaintiffs
Christopher Garnier and Kimberly Garnier

1

Case No. 3:17-CV-02215-W-JLB

Dated: December 2, 2019                    ARTIANO SHINOFF

By: /s/ Jack Sleeth Jr.
Daniel R. Shinoff
dshinoff@as7law.com
Jack M. Sleeth, Jr.
jsleeth@as7law.com
Jesse Basel
jbasel@as7law.com
Attorneys for Defendants MICHELLE
O'CONNOR-RATCLIFF: T.J. ZANE

## I. CASE STATEMENT

### A. Nature of the Case

This lawsuit is brought to vindicate violations of Plaintiffs' rights to free expression and to criticize government officials. Plaintiffs' criticisms of Poway Unified School District ("PUSD") board members T.J. Zane ("Zane") and Michelle O'Connor Ratcliff ("MOR") have, in Plaintiffs' view, made them the victims of retaliation and suppression of free speech. Defendants deny the allegations.

### B. Plaintiffs' Claims

As concerned parents with children attending public schools within PUSD, Plaintiffs have consistently spoken their minds and raised concerns on issues of oversight by members of PUSD's governing board. Instead of allowing Plaintiffs to voice their opinions, PUSD board members Zane and MOR have instead silenced them. Zane operates a Facebook social-media account in his official capacity as a PUSD board member. MOR operates Facebook and Twitter social-media accounts in her official capacity as a PUSD board member. Zane and MOR use their official-capacity accounts to disseminate information about PUSD-related matters to their constituents. While MOR and Zane allow and encourage their supporters to interact and join dialogues on their social-media accounts. Plaintiffs, on the other hand, have been effectively

prohibited and thus silenced from joining and contributing to dialogues on these social-media accounts in retaliation for their past critical and/or negative comments.

### C. Defendants' Defenses

Here, the Defendants' social media pages are not "governmental in nature." While the social media pages may have stated the Defendants' position as District Board members, the social media pages are not considered "official records." For example, the Ralph M. Brown Act ("Brown Act") (Cal. Gov. Code, § 54950 et seq.) does not require that the Defendants' posts be available to the public for review. In contrast, the Brown Act requires that communications between members of a legislative body regarding actions by that body be held during public meetings. *See* Cal. Gov. Code, § 54952.2.

Additionally, the legislative branch of government is different from the executive branch. A legislator cannot take official action alone. These two Defendants cannot take any official or legislative actions using their social media accounts. Instead, the five member Board needs a majority vote to take any action on behalf of the District. *See* Cal. Gov. Code § 54952.6.

There is a difference between legislators and an executive that is important in this case. An executive, like the President, can take action on a Facebook account. But a legislator may only take official action at a properly noticed meeting. These to members of a legislative body could not take action on their social media accounts. They could report a past action, but that is not an action. They assert that this distinction is critical to the decision to be made in this case.

"Expressive activity in a limited public forum accordingly may be restricted without violating the Constitution as long as the restrictions are viewpoint neutral and reasonable in light of the purpose served by the forum." (*Barlow v. Superior Court of California, Cty. of San Diego*, 2008 WL 4079285, at 12 (S.D. Cal. Aug. 28, 2008).) If the pages are considered limited public forums, then the blocking was proper,

because the Plaintiffs were not blocked due to their viewpoint, but, instead, they were blocked due to excessive and unrelated comments. Moreover, the stated purpose for the social media pages is to promote the Defendants' political agendas. Therefore, blocking the Plaintiff's excessive and comments unrelated to the original post is reasonable in light of the purpose of the forum.

## II. CAUSES OF ACTION

### A. First Cause of Action: Violation of Federal Constitutional Rights

Plaintiffs contend that Zane and MOR's retaliatory conduct violated and continues to violate Plaintiffs' rights of free expression and to criticize the government as guaranteed by the United States Constitution. Plaintiff's Complaint, p. 4, ¶ 11. Additionally, Zane and MOR's criticism-suppressing conduct as alleged in the operative pleading violated and continues to violate, among other things, Plaintiffs' right of free expression and to criticize the government as guaranteed by the United States Constitution. Plaintiff's Complaint, p. 4, ¶ 12. As a result, Plaintiffs have suffered a legally cognizable injury and have "chilled" their political speech in fear of being the victim of further retaliation and criticism suppression by Zane and MOR, as well as other public agencies and officials. Plaintiff's Complaint, p. 4, ¶ 13.

### B. Second Cause of Action: Violation of State Constitutional Rights

Plaintiffs contend that Zane and MOR's retaliatory conduct violated and continues to violate Plaintiffs' rights of free expression and to criticize the government as guaranteed by the California Constitution. Plaintiff's Complaint, p. 5, ¶ 15. Additionally, Zane and MOR's criticism-suppressing conduct as alleged in the operative pleading violated and continues to violate, among other things, Plaintiffs' right of free expression and to criticize the government as guaranteed by the California Constitution. Plaintiff's Complaint, p. 5, ¶ 16.

### C. Damages

This Court granted partial summary judgment in favor of Zane and MOR on the issue of damages due to the doctrine of qualified immunity. At this juncture, and without waiving any appellate rights, Plaintiffs are requesting declaratory and injunctive relief only.

### D. Defenses

Here, the Defendants' social media pages are not "governmental in nature." While the social media pages may have stated the Defendants' position as District Board members, the social media pages are not considered "official records." For example, the Ralph M. Brown Act ("Brown Act") (Cal. Gov. Code, § 54950 et seq.) does not require that the Defendants' posts be available to the public for review. In contrast, the Brown Act requires that communications between members of a legislative body regarding actions by that body be held during public meetings. *See* Cal. Gov. Code, § 54952.2.

Additionally, the legislative branch of government is different from the executive branch. A legislator cannot take official action alone. These two Defendants cannot take any official or legislative actions using their social media accounts. Instead, the five member Board needs a majority vote to take any action on behalf of the District. *See* Cal. Gov. Code § 54952.6.

There is a difference between legislators and an executive that is important in this case. An executive, like the President, can take action on a Facebook account. But a legislator may only take official action at a properly noticed meeting. These to members of a legislative body could not take action on their social media accounts. They could report a past action, but that is not an action. They assert that this distinction is critical to the decision to be made in this case.

"Expressive activity in a limited public forum accordingly may be restricted without violating the Constitution as long as the restrictions are viewpoint neutral and reasonable in light of the purpose served by the forum." (*Barlow v. Superior Court of*

AS7 Law San Diego/001350/000086/PL/S0449640.DOCX

ARTIANO SHINOFF

*California, Cty. of San Diego*, 2008 WL 4079285, at 12 (S.D. Cal. Aug. 28, 2008).) If the pages are considered limited public forums, then the blocking was proper, because the Plaintiffs were not blocked due to their viewpoint, but, instead, they were blocked due to excessive and unrelated comments. Moreover, the stated purpose for the social media pages is to promote the Defendants' political agendas. Therefore, blocking the Plaintiff's excessive and comments unrelated to the original post is reasonable in light of the purpose of the forum.

## III. WITNESSES

### A. Witnesses to Be Called at Trial

#### i. Plaintiffs expect to call the following witnesses at trial:

First, Plaintiff Christopher Garnier is expected to be called as a witness in this trial to testify as to his inability to comment or interact on Zane and MOR's social-media accounts as well as the events that led to him being silenced from commenting in these spaces. In the event that Christopher Garnier is unable to attend trial due to his work requiring him to be overseas, deposition testimony of Christopher Garnier will be used in lieu of calling him as a witness.

Second, Plaintiff Kimberly Garnier is expected to be called as a witness in this trial to testify as to her inability to comment or interact on Zane and MOR's social-media accounts and the events that led to her being silenced from commenting in these spaces.

Third, Nora Pasin is expected to be called at trial to testify as to her experience as an active user of social-media websites Facebook and Twitter. The testimony will provide information as to the structure and procedures for engaging in conversations and commenting on public Facebook and Twitter websites.

Fourth, MOR is expected to be called at trial to testify as to her use of social

media in her official capacity as a PUSD board member and her blocking of Plaintiffs to prevent them from commenting in these spaces.

Fifth, Zane is expected to be called at trial to testify as to his use of social media in his official capacity as PUSD board member and his blocking of Plaintiffs to prevent them from commenting in these spaces.

### ii. Defendants expect to call the following witnesses at trial:

First, Defendant Michelle O' Connor-Ratcliff is expected to be called at trial to testify as to the Defendants' social media pages, the disruption to the social media pages, and the subsequent reasoning for blocking the pages.

Second, Defendant T.J. Zane is expected to be called at trial to testify as to the Defendants' social media pages, the disruption to the social media pages, and the subsequent reasoning for blocking the pages.

Third, James Vaughn is expected to be called at trial to testify as to Defendants' social media pages, Plaintiffs' posts and activity on Defendants' social media pages, and the forensically captured data and methodology concerning Defendants' social media pages.

Fourth, Christine Paik is expected to be called at trial to testify as to Defendants' social media pages, the District's social media pages, and the District's practices and policies concerning Board members and social media pages.

Fifth, Plaintiff Christopher Garnier is expected to be called at trial to testify as to Defendants' social media pages, the disruption to the social media pages, and the subsequent reasoning for blocking the pages.

Sixth, Plaintiff Kimberly Garnier is expected to be called at trial to testify as to Defendants' social media pages, the disruption to the social media pages, and the subsequent reasoning for blocking the pages.

**B.    Experts to Be Called at Trial**

7

Plaintiffs will call Nora Pasin at trial to testify as to her knowledge of Facebook and Twitter acquired from being an active user of Facebook for over ten years and an active user of Twitter.

Defendants expect to call James Vaughn, managing director at iDiscover Solutions. Plaintiffs object to Defendants' reliance on Mr. Vaughn's testimony because of improper expert disclosures.

### C. Witnesses that Will Not Be Called at Trial

There are no witnesses who Plaintiff will not be calling at trial.

There are no witnesses that Defendants will not be calling at trial.

## IV. EXHIBITS

### A. Exhibits to Be Offered at Trial by Plaintiffs

Plaintiffs expect to offer the following eighteen exhibits at trial:

Exhibit 1: Michelle O'Connor-Ratcliff and T.J. Zane's Designation of Experts and Disclosure of Expert Testimony dated December 7, 2018.

Exhibit 2: Email dated December 12, 2018 between Cory Briggs and Michelle M. Pacis.

Evidences the e-mail exchange between Plaintiffs' counsel, Cory Briggs, and Counsel for Defendants, Michelle Pacis, in connection with Defendants' expert witness, showing that no stipulation was ever reached between parties to allow Defendants to file expert designation without the necessary expert report.

Exhibit 3: Excerpt from Facebook page of Michelle O'Connor-Ratcliff dated September 8, 2017.

Showing that MOR used her Facebook webpage in her official capacity as PUSD Board member by using her Facebook page to disseminate information concerning PUSD related matters and

| | |
|---|---|
| | showing that underneath her Posts, there is opportunity for viewers to engage in dialogue. |
| Exhibit 4: | Excerpt from Facebook About page of Michelle O'Connor-Ratcliff dated September 8, 2017. |
| | Shows that MOR edited her public office related Facebook page in various ways in order to display the Facebook page as her public official page. |
| Exhibit 5: | Excerpt from Twitter page of Michelle O'Connor-Ratcliff dated October 26, 2017. |
| | Showing that MOR utilizes Twitter in her capacity as public official in order to provide constituents updates regarding PUSD and PUSD related matters. |
| Exhibit 6: | Excerpt from Facebook page of T.J. Zane dated September 8, 2017. |
| | Showing that Zane utilized his Facebook page in his official capacity as PUSD board member and that the majority of content Zane posted was related to non-political PUSD updates and related PUSD information. |
| Exhibit 7: | Excerpt from Facebook About page of T.J. Zane dated September 8, 2017. |
| | Showing that Zane edited his public office related Facebook page in various ways in display the Facebook page as his public official page. |
| Exhibit 8: | Excerpt from Facebook About page of Facebook, undated. |
| | Provides information about Facebook including its purpose and mission statement: "Give people the power to build community and bring the world closer together." |

| | |
|---|---|
| Exhibit 9: | Excerpt from Facebook Help Center page "How do I ban or unban someone from my Page?" dated February 22, 2019. |
| | Guidance from Facebook on how to block and unblock members from Facebook pages. |
| Exhibit 10: | Excerpt from Facebook Help Center page "How do I control what visitors can post on my Page?" dated Febraury 22, 2019. |
| | Guidance from Facebook on how to control which users can create Posts on a Facebook page |
| Exhibit 11: | Excerpt from Twitter Help Center page "How to block accounts on Twitter" dated March 11, 2019. |
| | Guidance from Twitter on how to block specific accounts from interacting on a user's Twitter's page. |
| Exhibit 12: | Excerpt from Twitter Q4 and Fiscal Year 2018 Letter to Shareholders dated February 7, 2019. |
| | General background information regarding Twitter. |
| Exhibit 13: | Excerpt from Facebook page of Michelle O'Connor-Ratcliff dated October 26, 2017. |
| | Showing that MOR's Posts were related to PUSD in her official capacity as PUSD board member. |
| Exhibit 14: | Excerpt from Facebook page of Michelle O'Connor-Ratcliff, undated. |
| | Showing MOR interacting with and encouraging constituents who write supportive or positive feedback in response to her PUSD related posts. |
| Exhibit 15: | Excerpt fromFacebook page of T.J. Zane undated. |
| | Showing Zane's Posts were related to PUSD in his official capacity as PUSD board member. |

Exhibit 16:   Excerpt from Twitter page of Michelle O'Connor-Ratcliff dated October 26, 2017.

              Showing that Plaintiffs are blocked from viewing MOR's Twitter page.

Exhibit 17:   Excerpt from Facebook page of Michelle O'Connor-Ratcliff dated February 25, 2019.

              Showing MOR interacting with and encouraging constituents who write supporting or positive feedback underneath her PUSD related Posts.

Exhibit 18:   Excerpt from Twitter Values page "Our Values" dated March 11, 2019.

              Information about Twitter, including its values, stating that it believes in "free expression" and that "every voice has the power to impact the world".

**B.  <u>Exhibits to Be Offered at Trial by Defendants</u>**

Defendants expect to offer the following twenty-seven exhibits at trial:

Exhibit 1:   Poway Unified School District's Petition for Workplace Violence Restraining Order, dated October 21, 2014.

Exhibit 16:   Excerpt from Twitter page of Michelle O'Connor-Ratcliff dated October 26, 2017.

              Showing that Plaintiffs are blocked from viewing MOR's Twitter page.

Exhibit 17:   Excerpt from Facebook page of Michelle O'Connor-Ratcliff dated February 25, 2019.

              Showing MOR interacting with and encouraging constituents who write supporting or positive feedback underneath her PUSD related Posts.

Exhibit 18: Excerpt from Twitter Values page "Our Values" dated March 11, 2019.

Information about Twitter, including its values, stating that it believes in "free expression" and that "every voice has the power to impact the world".

### B. Exhibits to Be Offered at Trial by Defendants

Defendants expect to offer the following twenty-seven exhibits at trial:

Exhibit 1: Poway Unified School District's Petition for Workplace Violence Restraining Order, dated October 21, 2014.

Exhibit 2: Christopher Garnier's Special Motion to Strike the District's Petition, dates December 17, 2014.

Exhibit 3: Court's Order Denying Christopher Garnier's special Motion to Strike the District's Petition, dated January 13, 2015.

Exhibit 4: Restraining Order against Christopher Garnier, dated Febraury 6, 2015.

Exhibit 5: Court's Order of Attorney's Fees against Christopher Garnier, dated April 10, 2015.

Exhibit 6: Court of Appeal's Order regarding Christopher Garnier's Special Motion to Strike the District's Petition, dated October 26, 2016.

Exhibit 7: District's Memorandum of Costs on Appeal, dated March 10, 2017.

Exhibit 8: Abstract of Judgment, dated January 17, 2018.

Exhibit 9: Christopher Garnier's State Complaint against the Poway Unified District, dated December 2, 2014.

Exhibit 10: Christopher Garnier's Statement of Damages, dated Febraury 24, 2015.

Exhibit 11: Christopher Garnier's Request for Dismissal, dated January 25,

| | |
|---|---|
| 1 | 2017. |
| 2 | Exhibit 12: Court's Judgment Ordering Mr. Garnier to pay $4,804.00, dated April 7, 2017. |
| 4 | Exhibit 13: Christopher Garnier's Federal Court Complaint against the District, dated October 21, 2016. |
| 6 | Exhibit 14: Federal Court's Order of Dismissal, dated April 3, 2017. |
| 7 | Exhibit 15: Federal Court's Order of Dismissal, dated August 7, 2017. |
| 8 | Exhibit 16: Excerpts from Christopher Garnier's deposition transcript, dated November 27, 2018. |
| 10 | Exhibit 17: Excerpts from Kimberly Garnier's deposition transcript, dated November 19, 2018. |
| 12 | Exhibit 18: Excerpts from T.J. Zane's deposition transript, dated November 26, 2018. |
| 14 | Exhibit 19: Excerpts from Michelle O'Connor-Ratcliff's deposition transcript, dated November 20, 2018, |
| 16 | Exhibit 20: Copy of Kimberly Garnier's comments on T.J. Zane's Facebook campaign page; |
| 18 | Exhibit 21: Copy of Christopher and Kimberly Garnier's comments on Michelle O'Connor-Ratcliff's Facebook campaign page; |
| 20 | Exhibit 22: Copy of Christopher Garnier's tweets and mentions of T.J. Zane's Twitter campaign page; |
| 22 | Exhibit 23: Copy of Christopher Garnier's tweets and mentions of T.J. Zane's Twitter campaign page; |
| 24 | Exhibit 24: Kimberly Garnier's tweets and mentions of T.J. Zane's Twitter campaign page; |

ARTIANO SHINOFF

AS7 Law San Diego/001350/000086/PL/S0449640.DOCX

Exhibit 25:  Spreadsheet, created by James D. Vaughn, which identifies each type of post and the number of times it was posted by each Plaintiff on each of the Defendants' social media pages;

Exhibit 26:  CV of James D. Vaughn;

Exhibit 27:  Poway Unified School District's Administrative Regulation 1114(b).

### C. Exhibits Not Expected to Be Offered at Trial

Plaintiff expects to offer all exhibits at trial. Defendants expect to offer all exhibits at trial.

## V. STATEMENT OF STIPULATED FACTS

Plaintiffs reside within the boundaries of PUSD and have children who attend public schools within PUSD. As concerned parents with children attending public schools in the PUSD, Plaintiffs have consistently spoken their minds whenever it appeared to them that the best interests of PUSD were being subordinated to PUSD officials. For example, Plaintiffs were outspoken critics of former PUSD superintendent John Collins, who has since been charged with multiple crimes arising from his management of PUSD's affairs. More recently, Plaintiffs have raised serious concerns about what Plaintiffs consider to be a lack of oversight by members of PUSD's governing board members, Zane and MOR.

Both Zane and MOR have public Facebook pages where they create content, referred to by Facebook as "Posts", related to PUSD, including participation in PUSD activities. Both Zane and MOR customized these public Facebook pages to reflect their positions as government officials. MOR listed her "Current Office" as "Board of Education, President, Poway Unified School District" on her public Facebook page. Zane's public Facebook page reflected PUSD signage and included text that read: "T.J. Zane, Poway Unified School District Trustee."

At one point, Plaintiffs chose to join many dialogues on Zane and MOR's public Facebook pages by commenting underneath the Posts Zane and MOR published. Plaintiffs never wrote obscene, violent, or threatening comments within any dialogue underneath any Post on Zane's public office related Facebook page. Plaintiffs never wrote any obscene, violent, or threatening comments within any dialogue underneath any Post on MOR's public office related Facebook page or Twitter page. Because Plaintiffs have been openly critical of Zane and MOR in their official capacities, they have been silenced by Zane and MOR from participating in dialogues underneath Posts on Zane and MOR's public Facebook pages.

Originally, Zane would actively delete comments left by Plaintiffs on his public Facebook page and MOR would actively hide or delete comments left by Plaintiffs on her public Facebook page. Now, Plaintiffs have been completely banned from participating in dialogues on Zane and MOR's public Facebook pages. Plaintiffs cannot write comments or take any other interactive actions in response to the Posts on Zane and MOR's public Facebook pages. However, other constituents have not been silenced and can engage in dialogue in the space provided underneath the Posts.

MOR also utilizes a public Twitter page, where she promotes her participation in PUSD activities. MOR's Twitter page identifies her as member of the PUSD Board of Education. Plaintiffs are also blocked from MOR's public Twitter page, so they are no longer able to view the content she publishes on Twitter, referred to by Twitter as "Tweets", or write comments to MOR on Twitter. Constituents who are not blocked may choose to view comments in reply to a specific Tweet within MOR's public office related Twitter page. When doing so, they may choose to join the dialogue within the Tweet itself or replying to commenters. Before Plaintiff Christopher Garnier was blocked from MOR's public office related Twitter page, he chose to engage in many of these dialogues to discuss PUSD related matters and address ongoing PUSD issues. He

can no longer participate in dialogues stemming from MOR's page because he is now blocked from MOR's Twitter page.

### VI. DEPOSITION TRANSCRIPTS TO BE OFFERED AT TRIAL

**A.   Deposition Transcripts to Be Offered by Plaintiffs at Trial**

Plaintiffs will not be offering deposition transcripts for evidentiary purposes at trial unless, depending on the exact dates for trial, Plaintiff Christopher Garnier is not available to testify at trial due to his work schedule overseas; in that case, Mr. Garnier's testimony may be presented through his deposition transcript. Transcripts of Zane and MOR may be used for impeachment purposes.

**B.   Deposition Transcripts to Be Offered by Defendants at Trial**

Defendants will not be offering deposition transcripts for evidentiary purposes at trial; transcripts may be used for impeachment purposes.

### VII. JURY INSTRUCTIONS: NOT APPLICABLE

N/A (bench trial).

Defendants reserve the right to a trial by jury.

### VIII. TRIAL BY COURT WITHOUT JURY

This case will be tried by the Court without a jury.   3 DAYS

### IX. TIME ESTIMATE FOR TRIAL

Plaintiffs estimate three days for trial. Defendants estimate two days for trial.

**IT IS SO ORDERED.**

Dated: December 9, 2019

_____
Hon. Thomas J. Whelan
United States District Judge